The KEOGH CORPORATION, Plaintiff,

v.

HOWARD, WEIL, LABOUISSE, FRIED-RICHS INCORPORATED, Howard Weil Financial Corporation and Alan Arnold, Defendants.

No. 88 Civ. 8447 (MGC).

United States District Court, S.D. New York.

Aug. 10, 1993.

Beigel & Sandler, Ltd., New York City by Marilyn Neiman, for plaintiff.

Fried, Frank, Harris, Shriver & Jacobson, New York City by Jed S. Rakoff, Weinberg and Green, Baltimore, MD by Sherry H. Flax, Charles O. Monk, II, Matthew G. Dobson, for defendants.

Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, LA by William C. Gambel, for defendant Alan Arnold.

## MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

The Keogh Corporation ("Keogh") sues defendants Howard, Weil, Labouisse, Friedrichs Incorporated, ("Howard Weil"), Howard Weil Financial Corporation ("Howard Weil Financial") and Alan Arnold for violations of RICO. The complaint alleges that defendants took over Keogh's business through RICO violations based on predicate acts of extortion and bribery. The complaint also alleges various pendent state law claims. Defendants move for summary judgment dismissing the action on a number of grounds. In open court, I granted defendants' motion for summary judgment with respect to the state law claims. (5/7/93 Tr. at 32–33, 57; 6/22/93 Tr. at 2–4.) This opinion addresses defendants' argument that the action, purportedly a suit brought by a corporation, must be dismissed because it was not authorized by plaintiff's board of directors. For the reasons discussed below, defendants' motion is granted.

### BACKGROUND

Howard Weil, a wholly-owned subsidiary of Howard Weil Financial, is a New Orleans-based investment banking firm with offices throughout the South. Alan Arnold served as President of Howard Weil and Howard Weil Financial from January, 1985 until June, 1990, the period during which the events at issue in this lawsuit occurred.

Keogh, originally the Public Employee Plans Corporation, was incorporated in January, 1983 to develop, market and administer tax-deferred employee benefit plans for public school employees. The corporation's name was changed to Employee Retirement Funding Corporation in July, 1983 and to the Keogh Corporation in October, 1985.

This action arises from a failed joint business venture between Keogh and Howard Weil to market retirement plans to Louisiana school board employees. The complaint alleges that through a course of conduct consisting of extortion, bribery and fraud, defendants gained control of Keogh's business.

The original complaint which was filed on November 29, 1988 has been amended four times. All discovery has been completed and a Joint Pre–Trial Order has been filed. The parties have submitted voluminous documents in connection with this motion.

It is undisputed that Keogh's board of directors never authorized the commencement of this lawsuit. Seymour Halpern, the President of Keogh, and Arthur Froom, Keogh's Treasurer, authorized commencement of the action. (Neiman Aff., Ex. 8N, Halpern Aff.; Froom Aff., Ex. 9N ¶ 6.)[1] There is also evidence that a majority of Keogh's stockholders signed consents authorizing the commencement of the action, and authorizing Froom to manage the affairs of Keogh until the resolution of the litigation, including acceptance of any settlement of the action.

### DISCUSSION

Defendants argue that a Delaware corporation may not initiate a lawsuit without the authorization of its board of directors and that the stockholders who instituted the lawsuit in Keogh's name have not complied with

---

1. Halpern became President of Keogh in March, 1986 when the directors removed Froom as President. Froom argues that he was improperly removed from office, and is currently litigating the removal in Delaware state court. Accordingly, Froom contends that he authorized this lawsuit not only in his capacity as Treasurer, but also in his capacity as President. (Neiman Aff., Ex. 9N, at 17–18.)

Fed.R.Civ.P. 23.1 because they have not made demand on the directors or proffered facts that would establish futility of demand under Delaware law.

Plaintiff argues that Rule 23.1 is not applicable because this is not a derivative action, but rather a direct action by Keogh. Plaintiff does not dispute that its board of directors did not authorize the lawsuit. However, plaintiff contends that the action has been properly authorized in alternative ways. First, plaintiff argues that commencement of the action by Froom and Halpern in their capacity as corporate officers constitutes effective authorization under Delaware law. Second, plaintiff argues that approval of the action by a majority of stockholders is also proper authorization under Delaware law.

Both sides agree that the Delaware law of corporate governance controls the dispositive issue of whether this suit may be entertained by the court.

1. *Authority of Corporate Officers*

▉ Under Delaware law, the directors are responsible for decisions concerning the management of the corporation, unless the certificate of incorporation or bylaws provide otherwise. 8 Del C. § 141(a) states:

The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation. If any such provision is made in the certificate of incorporation, the powers and duties conferred or imposed upon the board of directors by this chapter shall be exercised or performed to such extent and by such person or persons as shall be provided in the certificate of incorporation.

Section 109(b) states:

The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees.

▉ The decision to bring a lawsuit or to refrain from enforcing a corporate cause of action is a decision relating to the management of the corporation. Accordingly, unless the certificate of incorporation or bylaws assign this responsibility to other individuals, the directors are responsible for deciding whether to initiate litigation on the corporation's behalf. *See Levine v. Smith,* 591 A.2d 194, 200 (Del.1991).

▉ No provision of Keogh's Certificate of Incorporation authorizes an officer to initiate litigation. Article Eight provides:

For the management of the business and for the conduct of the affairs of the corporation, and in further definition, limitation and regulation of the powers of the corporation and of its directors and of its stockholders or any class thereof, as the case may be, it is further provided:

1. The management of the business and the conduct of the affairs of the corporation shall be vested in its Board of Directors ...

(Defs' App., Ex. A.)

There is no bylaw expressly authorizing an officer to initiate litigation, and plaintiff has submitted no board of directors resolution which designates an officer to initiate litigation.

Plaintiff argues that under Delaware law officers are empowered to commence litigation, even in the absence of authorization in the corporate documents. As support for this argument, plaintiff relies solely on *Phoenix Finance Corp. v. Iowa–Wisconsin Bridge Co.,* 41 Del. 130, 16 A.2d 789 (Super.Crt.1940).

Plaintiff incorrectly argues that in *Phoenix* the court held that the treasurer of a corporation has authority to take any action the corporation could take. At issue in *Phoenix* was the scope of the authority of the general manager of a corporation. The court found that the corporation's secretary-treasurer, whom the board of directors had appointed to act as general manager, had the authority to sell toll tickets because a general manager appointed by the directors has the implied authority to do anything the corporation could do in the general scope and operation

of the business. The court did not find that the general manager's authority as secretary-treasurer permitted him to take action not in the ordinary course of the operation of the business.

The president of a corporation is presumed to have "certain more or less limited powers in the transaction of the usual and ordinary business of the corporation." *Italo–Petroleum Corp. v. Hannigan*, 40 Del. 534, 541, 14 A.2d 401, 406 (1940). Whether the initiation of litigation is in the ordinary course of business depends on the nature of the litigation. For example, a collection suit to recover money owed by a customer is in the ordinary course of business and generally falls within the implied powers of the president of a corporation. But this RICO action is unusual and could not be considered the usual and ordinary business of Keogh.

Powers of a president in excess of power over the ordinary course of business must be specifically given. Neither Froom nor Halpern was given the power to initiate litigation out of the ordinary course of business. Accordingly, their authorization of this action does not constitute corporate authorization.

### 2. *Stockholder Approval*

Alternatively, plaintiff argues that consents by a majority of Keogh's stockholders constitute corporate authorization of the lawsuit. No provision of Keogh's Certificate of Incorporation or Bylaws permits stockholders to initiate litigation. Plaintiff argues that no such provision is required because Delaware law permits stockholders to authorize any action the board of directors can authorize.

■ The provisions of Delaware law to which plaintiff points in support of this argument are §§ 211(b) and 228(a) of Delaware General Corporation Law. Section 211(b) provides:

An annual meeting of stockholders shall be held for the election of directors on a date and at a time designated by or in the manner provided in the bylaws. Any other proper business may be transacted at the annual meeting.

Section 228(a) provides:

Unless otherwise provided in the certificate of incorporation, any action ... which may be taken at any annual or special meeting of ... stockholders [of a corporation] may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted ...

In essence, plaintiff argues that because, pursuant to § 211, the board of directors could decide at a stockholders' meeting to initiate litigation, § 228 grants stockholders the same power to initiate litigation.

Plaintiff points to no case in which, pursuant to § 228, stockholders took action which required the approval of directors. Instead, the consent process has been used by stockholders to exercise their statutorily conferred rights to elect and remove directors, and to amend bylaws, without holding a meeting. *See Marks v. Menoutis*, 1992 WL 22248 1992 Del.Ch., LEXIS 13 (Del.Ch. Feb. 3, 1992); *Venture First L.P. v. DeKovacsy*, 1990 WL 186458 1990 Del.Ch. LEXIS 177 (Del.Ch. Oct. 19, 1990), *aff'd*, 586 A.2d 1201 (1990); *Grynberg v. Burke*, Civ. No. 5198, 6480, 1981 WL 17034 (Del.Ch. Aug. 13, 1981); *Chew v. Inverness Mgmt. Corp.*, 352 A.2d 426 (Del. Ch.1976).

■ Section 228 is not a substantive grant of power to stockholders. This section merely creates a written consent procedure by which stockholders can take any action they are otherwise authorized to take at a meeting without holding a meeting. Neither Delaware law nor Keogh's corporate documents give stockholders the power to initiate litigation. Therefore, the stockholder consents executed pursuant to § 228 cannot authorize this lawsuit under Delaware law.

Since plaintiff insists that this is not a derivative action, I do not reach defendants' argument of failure to comply with Fed. R.Civ.P. 23.1.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted, and the action is dismissed.

SO ORDERED.