2004 WY 61

**Steven R. WOODS, Appellant (Defendant),**

v.

**WELLS FARGO BANK WYOMING, Appellee (Plaintiff).**

**Steven R. Woods, in behalf of Imperial Homes, Inc., a Wyoming corporation, Appellant (Plaintiff),**

v.

**Wells Fargo, as successor to Norwest Bank of Wyoming, N.A., a National Banking Association, doing business in Wyoming; Tracy Zubrod, Bankruptcy Trustee for the Estate of Roger Woods; Ronald Woods and Marquietta C. Woods, in their individual capacities, Appellees (Defendants).**

**Steven R. Woods, individually and in his capacity as a Co–Trustee of W R Revocable Trust, Appellant (Defendant),**

v.

**Roger A Woods, Appellee (Plaintiff),**

and

**Marquietta C. Woods and Well Fargo Bank, Wyoming, N.A. Appellees (Intervenors).**

Nos. 02–142, 02–174, 02–179.

Supreme Court of Wyoming.

May 26, 2004.

Rehearing Denied June 22, 2004.

Representing Appellant: Bernard Q. Phelan, Phelan-Watson Law Office, Cheyenne, Wyoming.

Representing Appellee Wells Fargo Bank Wyoming, N.A.: Peter K. Michael, P.C., Cheyenne, Wyoming; Gary R. Scott of Hirst & Applegate, P.C., Cheyenne, Wyoming.

Representing Appellee Marquietta Woods: Janet L. Tyler, Laramie, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] We have consolidated for purposes of appeal three separate lawsuits involving disputes among the principals of Imperial Homes, Inc. (Imperial). In the first case, No. 02–142, Steven R. Woods appeals from several post judgment rulings of the district court, primarily one vacating a satisfaction of the judgment that had been entered against him in favor of Imperial. In the second case, No. 02–174, Steven R. Woods appeals the dismissal of his shareholder's derivative action against fellow shareholders and Wells Fargo Bank in its capacities as president of Imperial and trustee for the corporation's majority shareholder. In the third case, No. 02–179, Steven R. Woods appeals three orders of the district court regarding administration of the W R Revocable Trust. Finding no abuse of discretion or legal error in any of these matters, we affirm the decisions of the district court in all three cases.

## ISSUES

### Case Number 02–142

[¶ 2] In the first matter, *Woods v. Wells Fargo Bank Wyoming,* Appellant Steven R. Woods states the issues as follows:

> I. Was the corporation president, who is afforded the authority to "in general supervise and control all business and affairs of the corporation," authorized to release a money judgment against a director?
>
> II. Is a court order obtained through the action of a terminated lawyer clearly erroneous if the court had notice of such termination?
>
> III. Is a judicial finding "clearly erroneous" if based upon inadmissible hearsay evidence?

Appellee Wells Fargo Bank of Wyoming sees the issues as:

> I. Whether the district court properly vacated the satisfaction of judgment because it was executed without authority from the judgment creditor's Board of Directors.
>
> II. Whether the satisfaction of judgment should have been vacated because it was an undisclosed and unfair conflict of interest transaction between the judgment creditor and one of its directors.
>
> III. Whether the district court properly vacated the satisfaction of judgment because it was unsupported by any consideration from the judgment debtor to the judgment creditor.
>
> IV. Whether attorney Timothy Kingston's representation of Imperial Homes, Inc. undermines the district court's decision to vacate the satisfaction of judgment.
>
> V. Whether the district court could properly consider Timothy Kingston's affidavit supporting the motions for vacation of the satisfaction of judgment.

### Case Number 02–174

[¶ 3] In his appeal of the dismissal of the shareholders derivative suit, Steven Woods presents one issue:

> In a derivative stockholders action, was summary judgment properly granted where there was evidence that the demand requirement of Wyo. Stat. § 17–16–741 would be futile and where plaintiff, holding twenty-five percent (25%) of the outstanding stock, was sufficiently motivated to pursue the corporation's claim against Wells Fargo and the other officers and directors?

Wells Fargo restates this issue:

> Did the District Court abuse its discretion in finding that Plaintiff did not fairly and adequately represent the interests of the other shareholders and the corporation and in dismissing Plaintiff's derivative action lawsuit?

**Case Number 02-179**

[¶ 4] In his appeal of the district court's three orders concerning administration of the trust, Steven Woods states the following issues:

I. May a court deny distribution of a trust estate when the unambiguous purposes of the trust have been accomplished and the trust is passive?

II. Without pleading a cause of action or defense, a trustee is granted leave to intervene in a suit for the sole purpose of conducting discovery. Does the district court thereafter have subject matter jurisdiction to approve the trustee's administration of the estate?

III. Where the trial on the issue of removal of defendant as co-trustee was conducted without notice or a meaningful opportunity to present evidence, and the defendant's counterclaim was dismissed without any hearing at all, was defendant denied due process of law?

Wells Fargo states the issues similarly:

I. Whether the district court properly denied a beneficiary's motion for immediate in-kind distribution of trust real estate.

II. Whether the district court properly entered and enforced an order requiring the successor trustee to obtain court approval for all asset sales that were contested by any beneficiary.

III. Whether the district court followed due process of law in proceedings that resulted in removal of co-trustees.

## FACTS

[¶ 5] We will review the facts of this case in some detail as they pertain to all three cases, as it is necessary to understand the posture of the cases in this Court and because the facts reveal corporate machinations that necessarily informed the trial judge's exercise of discretion in each case. Even at this level of detail, however, we have omitted much of the procedural skirmishing that has been characteristic of the litigation.

[¶ 6] Imperial Homes, Inc., was a Wyoming corporation started by Raymond Woods and engaged primarily in residential construction. Before his death, Raymond Woods established the W R Revocable Trust and transferred his majority Imperial shareholdings into the trust. After his death in 1995, the trust remained the majority shareholder, with the other shares divided among Raymond Woods' four children, Steven R. Woods, Roger A. Woods, Marquietta Woods, and Ronald Woods, and Raymond's brother, Donald Woods.

[¶ 7] Raymond Woods' trust documents provided that, after his death, his sons Steven and Roger Woods would be successor co-trustees of the W R Revocable Trust. They in fact began to serve as co-trustees after their father's death in 1995. By May 1997, however, a dispute between them resulted in Roger's filing a complaint against his co-trustee brother for an accounting and declaratory judgment. Their sister, Marquietta Woods, also a trust beneficiary, intervened and requested that both brothers be removed as trustees. At the hearing on these motions,[1] Steven Woods' attorney argued procedural objections, but no evidence was presented; Marquietta wanted both trustees removed, and Roger assented to his own removal if Steven were also removed. The district court on February 18, 1998, ordered the removal of both trustees and, on February 25, 1998, named Norwest Bank Wyoming, N.A., as sole successor trustee. Norwest Bank later merged with Wells Fargo Bank, the current trustee.

[¶ 8] Steven Woods filed a W.R.C.P. 60(b) motion for relief from the order removing him as trustee, which was denied on March 18, 1998. He also filed a petition for writ of review in this Court, case number 98-341, which was denied on December 15, 1998. He also moved under Rule 60(b) in the district court for an order that the court approve any proposed transfer of trust assets. The trustee and other beneficiaries did not object to court approval so the district court ordered that the trustee give ten days notice of any

1. The hearing was not recorded. Pursuant to W.R.A.P. 3.03, the parties stipulated to the proceedings.

proposed transfer and, if any beneficiary objected, the trustee would be required to obtain court approval before the transfer could be completed. This procedure was followed for several transactions until Steven Woods through new counsel raised, for the first time in February 2002, the argument that the district court lacked jurisdiction to require the pre-approval procedure he himself had requested.

[¶ 9] During the procedural skirmishing following the replacement of the co-trustees, Norwest in the spring of 1998 was attempting to inventory the trust assets but received no cooperation from the prior trustees. So on June 26, 1998, Norwest moved to intervene in the action commenced by Roger Woods in order that the bank could avail itself of formal discovery. Decision on the intervention was postponed until after final ruling on Steven Woods' motion for a new trial. Steven Woods, however, refused to participate in the scheduled hearing, insisting instead on a continuance and discovery regarding who was at fault as between the brothers. On August 31, 1998, the district court issued an order denying the continuance because fault in the dispute was not relevant, denying a new trial or other relief from the order removing the co-trustees, affirming the appointment of Norwest Bank as successor trustee and granting the bank's motion to intervene.

[¶ 10] The bank exercised the trust's rights as majority shareholder in Imperial and served on the corporation's board of directors. On July 27, 1998, the bank's trust officer, Richard Cuthbertson, was elected president of the corporation. In the fall of 1999, the trust pursuant to court order distributed its Imperial shares equally to Raymond Woods' four children. When the trust shares passed out of the trust and the bank no longer had majority control of the corporation, the board of directors, on July 27, 1999, named Steven Woods to replace Cuthbertson as president.

[¶ 11] During the five months immediately after his becoming president, a time when the corporation's business was inactive, Steven withdrew for his personal use approximately $80,000 of the $90,000 balance in the corporate bank account. When the other shareholders learned of this transfer, a special shareholders meeting was called for January 6, 2000, and a board of directors meeting for January 10, 2000, as a result of which Steven was removed as president and replaced by Ronald Woods.

[¶ 12] The board also on January 14, 2000, authorized their attorney, Timothy Kingston, to pursue recovery of the transferred funds from Steven. On January 24, 2000, the corporation filed an action in district court against Steven Woods, seeking an accounting and recovery of the corporate funds. The corporation obtained a prejudgment writ of attachment based upon the affidavit of then-president Ronald Woods alleging Steven's theft of the funds.

[¶ 13] On October 25, 2000, nine months after the corporation began its lawsuit against him, Steven Woods filed a shareholders derivative action against Wells Fargo and the other shareholders. He alleged that Wells Fargo Bank, when it was holder as trustee of a majority of the shares in Imperial and its president, mismanaged the business to the detriment of the corporation and its shareholders. The gravamen of his complaint was that the bank had acted to liquidate corporate real estate assets rather than operate the business as a going concern. Following discovery, defendant Wells Fargo filed a motion for summary judgment as to the entire cause of action, which was granted on the grounds that the plaintiff did not fairly and adequately represent the interests of the shareholders of Imperial Homes and had not made the necessary demand on the corporation as required by W.R.C.P. 23.1 and Wyo. Stat. Ann. § 17–16–741.

[¶ 14] Meanwhile, Mr. Kingston, during 2000 and 2001, was representing the corporation in yet another lawsuit, one brought against Imperial by a corporate creditor, Delbert Weidenhamer. The W R Revocable Trust was also named a defendant in that lawsuit because the corporation had transferred to the trust property in which Weidenhamer held an interest as mortgagee. The parties, including Imperial through its attorney, Mr. Kingston, reached a settlement of that litigation in February of 2001, by the

terms of which the trust would pay $60,000 to Weidenhamer and the corporation would transfer to him several installment land contracts payable to Imperial and having an agreed value of $90,000. After the settlement was executed on April 26, 2001, however, it was discovered that Ronald had already liquidated those contracts for his own account and they had no remaining value to Weidenhamer or Imperial.

[¶ 15] Immediately after the corporate attorney and other shareholders discovered Ronald's prior sale of the land contracts, Ronald, as president but without any action of the board of directors, purported to terminate Mr. Kingston's services as attorney for the corporation. However, no pleadings were filed at that time in any of the pending lawsuits to remove Mr. Kingston, and he continued to act on behalf of the corporation through its board of directors. He filed a summary judgment motion in the collection action against Steven Woods on May 23, 2001, in Imperial's action for recovery of the $80,000. As part of his summary judgment response, Steven Woods filed a motion to disqualify Mr. Kingston as the corporation's attorney on the grounds that Steven Woods had retained him as the corporation's attorney and believed Mr. Kingston represented Steven individually in his capacity as president. The court denied the motion to disqualify and granted the corporation's summary judgment on July 18, 2001, against Steven Woods in the amount of $80,789.41.

[¶ 16] Steven Woods did not appeal the summary judgment or the denial of Mr. Kingston's disqualification. However, on July 31, 2001, two documents were filed in the case, one entitled "Release and Satisfaction in Full of the Judgment in It's [sic] Entirety," and the other, "General Release of Judgment Payment in Full in It's [sic] Entirety." The former document, although unsigned, recited that it was signed by Ronald D. Woods; the latter document was signed by "Ronald D. Woods, President, Executive officer of Imperial Homes, Inc." [2] Testimony later established that the purported release documents were drafted by Ronald Woods and filed by Steven Woods.

[¶ 17] Imperial responded through Attorney Kingston by moving on August 29, 2001, to set aside the satisfaction and release of judgment. Imperial also proceeded to enforce the judgment through garnishment of Steven Woods' bank accounts. Steven Woods in turn moved to stay execution, raising as grounds once again the authority of Mr. Kingston to represent the corporation. Imperial countered by moving to release garnished funds held by the clerk. The district court held a hearing on these post-judgment matters on March 28, 2002, then ordered on April 9, 2002, that the "release of judgment" was void, that enforcement of the judgment against Steven Woods would not be stayed, and that garnished funds would be released to the judgment creditor/corporation. It is the court's decision on these three motions that is currently before this Court on appeal in case number 02-142.

[¶ 18] After the filing but before the ruling on those post-judgment motions, Marquietta Woods filed a petition for the dissolution of Imperial, as a result of which the district court on October 22, 2001, appointed a receiver to operate the corporation. Imperial then, through its receiver and after court approval, assigned its judgment against Steven Woods to the W R Revocable Trust, of which Wells Fargo Bank Wyoming, N.A., remained the trustee. Pursuant to the assignment, Wells Fargo therefore appears as the judgment creditor/appellee in case number

2. The substantive portion of the latter document states in full:

FOR GOOD CONSIDERATION, the undersigned jointly and severally hereby forever release, discharge, acquit and forgive from any and all claims, actions, suits, demands, agreements, and each of them, if more than one, liabilities, judgments, and proceedings both at law and in equity arising from the beginning of time to the date of these presents and as more particularly related to or arriving from: Imperial Homes, Inc. a Wyoming Corporation against Steven R. Woods a Wyoming resident. Hereby as set forth herein this document. Furthermore releasing said Judgment more know as stated in the motions, actions filed in the Laramie Co. District Court, more known as Doc. 156 No. 243 in it's [sic] entirety payment in full.

Default

This release shall be binding upon and inure to the benefit of the parties, their successors, assigns and personal representatives.

02–142. Wells Fargo also appears as defendant/appellee in case number 02–174, the shareholders derivative suit by Steven Woods against Wells Fargo for its actions as president of Imperial. Finally, Wells Fargo appears as defendant/appellee, in its capacity as trustee of the W R Revocable Trust, in case number 02–179, which is Steven Woods' appeal of three orders entered regarding administration of the trust.

### *Steven R. Woods v. Wells Fargo Bank Wyoming, Case No. 02–142*

#### Standard of Review

[¶ 19] The order appealed from in this matter was a combined ruling of the trial court on two post-judgment motions of the judgment creditor and one of the judgment debtor. Post-judgment enforcement and execution proceedings are addressed to the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion, *Orosco v. Schabron,* 9 P.3d 264, 266 (Wyo.2000), including motions to set aside a satisfaction of judgment. *W.F. Conelly Constr. Co. v. L. Harvey Concrete, Inc.,* 162 Ariz. 574, 785 P.2d 94, 97 (App.1989).

[¶ 20] In *Gore v. Sherard,* 2002 WY 114, ¶ 20, 50 P.3d 705, ¶ 20 (Wyo.2002), we restated our abuse of discretion standard:

> [T]he core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (quoting *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236, 1238 (Wash.App.1985)); *Basolo v. Basolo,* 907 P.2d 348, 353 (Wyo. 1995). We must ask ourselves whether the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious.

#### Discussion

[¶ 21] We will first address Steven Woods' challenge to Mr. Kingston's representation of Imperial, as it affects all of the cases. Mr. Kingston was retained for this litigation by resolution of the board of directors on January 14, 2000, and commenced the lawsuit on January 24, 2000. He filed the corporation's summary judgment motion May 23, 2001. It was not until June 6, 2001, that Steven Woods' attorney filed a motion to disqualify Imperial's attorney. The motion did not allege that Mr. Kingston had been terminated, only that his representation constituted or gave the appearance of a conflict of interest because Steven Woods as president of Imperial had consulted with Mr. Kingston. The court denied the motion to disqualify when it granted Imperial's summary judgment on July 18, 2001, for the stated reason that the motion was untimely. There was no appeal of that order, yet Steven Woods raised the authority of the plaintiff's attorney once again in post-judgment pleadings on September 10, 2001, and October 15, 2001, this time on the grounds that Mr. Kingston had been terminated by Ronald Woods when he was Imperial's president.

[¶ 22] Mr. Kingston was retained to represent the corporation, and was specifically instructed to commence the lawsuit against Steven Woods by Imperial's board of directors. He entered his appearance in the litigation on behalf of Imperial by filing the complaint in January 2000. The corporation accepted the benefit of this filing and presumably continued to pay Mr. Kingston. The corporate plaintiff to this date has filed no pleadings denying his authority or seeking his removal or substitution as counsel. Throughout this time, therefore, Mr. Kingston is presumed to have been representing Imperial for all purposes in the litigation and could withdraw only with leave of court. Wyo. Uniform Rules for Dist. Ct. 102(a)(2), (c).

[¶ 23] It was not until summary judgment was granted and post-judgment enforcement proceedings began that Steven Woods as defendant asserted in any pleadings that Mr. Kingston had been terminated as Imperial's attorney. The first pleading alleging the termination was filed on September 10, 2001—some twenty months after the commencement of the litigation, four months af-

ter the motion for summary judgment, two months after the grant of summary judgment—and only in response to Imperial's pleadings, filed by Mr. Kingston, seeking to set aside the pro se satisfaction of judgment prepared by Ronald Woods and filed by Steven Woods at a time when Mr. Kingston was still Imperial's attorney of record. The belated allegation was obviously being used as a tactical weapon by Ronald and Steven Woods to defeat the corporation's judgment, and to this date no motion seeking leave of court for Mr. Kingston's withdrawal or substitution of other counsel has been filed.

[¶ 24] Among the many policy reasons for the requirement of leave of court for withdrawal of counsel is to avoid the confusion created by such self-help machinations as appear in the record of this case. It is all the more important where principals of a corporation are deliberately attempting to blur the separate identity of the corporation and its attorney's loyalties. *See, e.g., Bowen v. Smith,* 838 P.2d 186, 197–98 (Wyo.1992) (Brown, J., concurring).

> [T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.

Wyo. Rules of Prof'l Conduct for Attorneys, Scope, ¶ 6, at 697. Even if Mr. Kingston in fact had a conflict of interest or acted on behalf of Imperial after his services were terminated, any remedy would lie with the corporate client and the Board of Professional Responsibility, not the corporation's judgment creditor. There is nothing in the record to indicate that the corporation through its board of directors or later its receiver attempted to replace Mr. Kingston as corporate attorney or to void any of his actions. In fact, the receiver after his appointment continued to use Mr. Kingston's services when the judgment in this matter was assigned to the W R Revocable Trust. Appellant cites no pertinent authority for his contention of per se invalidity for actions taken by Mr. Kingston in obtaining and attempting to enforce the corporation's judgment against him. We will not permit the rules of conduct for attorneys to be used very late in the game to collaterally attack a judgment that was not appealed or to permit opposing counsel to decide unilaterally when they will ignore opposing counsel and deal directly with an opposing party. *CRB v. Dept. of Family Services,* 974 P.2d 931, 936–37 (Wyo. 1999). While it is true that in general a corporate president may sometimes have authority to retain and change the corporation's attorney, such authority will not be applied blindly without regard to common sense and context. Where a corporation is attempting to enforce its judgment against one former president for misappropriation, and the successor president/brother may have similarly sold corporate assets for his own account, replacement of the corporation's attorney is a matter for the board of directors, not one of the involved presidents. Moreover, the appropriate remedy would be for the Board of Professional Responsibility to enforce, not the corporation's judgment creditor.

[¶ 25] Turning to the specific post-judgment orders, the district court vacated the satisfaction of judgment on two separate grounds, the first being that the corporate president did not have authority to execute the release and the second being that there was no consideration for the release. We first consider Steven Woods' argument on appeal that Ronald Woods was authorized as president of the corporation to execute a satisfaction of judgment on behalf of the corporation.

[¶ 26] The Wyoming Business Corporation Act provides:

> All corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitation set forth in the articles of incorporation or in [a shareholder's agreement].

Wyo. Stat. Ann. § 17–16–801(b) (LexisNexis 2003). Consistent with the statute, we have said that "[a] corporation's bylaws and any

resolutions adopted by the corporation's board of directors in accordance with the bylaws determines the extent of the president's authority." *Squaw Mt. Cattle Co. v. Bowen,* 804 P.2d 1292, 1295 (Wyo.1991). Ultra vires acts of a corporate president or other agent are void unless under agency principles an innocent third party is permitted to enforce an action taken with apparent authority or ratification of the corporation. *J Bar H, Inc. v. Johnson,* 822 P.2d 849, 859 (Wyo.1991).

[¶ 27] Appellant cites Imperial's by-laws to the effect that the president "shall in general supervise and control all of the business and affairs of the corporation" and "in general shall perform all duties incident to the office of President and such other duties as may be prescribed by the Board of Directors from time to time." He argues without citation of authority that satisfaction of a judgment is part of the general "business and affairs" of Imperial. We must disagree.

[¶ 28] The by-laws' grant of authority to the president, as in the case of his authority to dismiss the corporate attorney, must be construed in context. "Whether the initiation of litigation is in the ordinary course of business depends on the nature of the litigation." *Keogh Corp. v. Howard, Weil, Labouisse, Friedrichs, Inc.,* 827 F.Supp. 269, 272 (S.D.N.Y.1993).

> It has long been the general rule that the authority of a board of directors to manage a corporation's affairs extends to control of the corporation's litigation—including decisions regarding its initiation, defense, abandonment, and settlement.
>
> Correlatively, absent express delegation of the corporate directors' authority to control the decision whether to conduct litigation on the corporation's behalf, via express provision in the corporate articles, bylaws, or a properly adopted resolution, ... no one else may legitimately exercise that authority.

*Chun v. Board of Trustees,* 87 Hawai'i 152, 952 P.2d 1215, 1226 (1998) (citations omitted).

[¶ 29] The same would apply to settlement of litigation or release of judgments. Imperial was primarily involved in the residential construction business. It was not a collection agency, where the enforcement and satisfaction of judgments could be considered the ordinary business of the corporation. More significantly, Steven Woods was not an innocent third party dealing with the corporation but was a former president with an $80,000 judgment against him for misappropriating corporate money. Even if the record showed the president routinely engaged in collection activities on behalf of the corporation against its customers—of which there was in fact no evidence—such authority could not reasonably be construed to include authority over the $80,000 debt of a former president that resulted from misappropriation, that had been reduced to judgment, and that represented one of the corporation's only assets at that time. The bylaws in this case and the question of authority to settle litigation are strikingly similar to *Squaw Mountain,* 804 P.2d at 1295, and the result must be the same: a president's general authority to supervise and control the business and affairs of a corporation does not include authority over settlement of litigation or release of judgments against a corporate director and former president.

[¶ 30] Steven Woods does not challenge on appeal the district court's finding that the release was not given in exchange for payment of the judgment or other consideration. Even if we had determined that the corporate president did have authority to execute a release of judgment, the lack of consideration by itself would be sufficient grounds to uphold the district court's order setting aside the release. *W.F. Conelly Const.,* 785 P.2d at 97.

[¶ 31] Wells Fargo is also correct in its conflict-of-interest analysis. Wyo. Stat. Ann. § 17–16–831(a) (LexisNexis 2003) provides that:

> (a) A conflict of interest transaction is a transaction with the corporation in which a director of the corporation has a direct or indirect interest. A conflict of interest transaction is not voidable by the corporation solely because of the director's interest in the transaction if any one (1) of the following is true:

(i) The material facts of the transaction and the director's interest were disclosed or known to the board of directors or a committee of the board of directors and the board of directors or committee authorized, approved or ratified the transaction;

(ii) The material facts of the transaction and the director's interest were disclosed or known to the shareholders entitled to vote and they authorized, approved or ratified the transaction; or

(iii) The transaction was fair to the corporation.

In *Lynch v. Patterson,* 701 P.2d 1126, 1131–32 (Wyo.1985), we ruled that failure of the involved director to prove one of the above exceptions renders the transaction voidable by the corporation and also a violation of the general director loyalty statute, Wyo. Stat. Ann. § 17–16–830 (LexisNexis 2003).

[¶ 32] When Ronald and Steven Woods agreed to the satisfaction of judgment, and when it was signed by Ronald and filed by Steven, they were on Imperial's board of directors. Their arrangement was not disclosed to their sister, the other board member, nor was it ever authorized, approved or ratified by the board or the shareholders. Moreover, Steven Woods did not pay the judgment or give any other consideration in exchange for the satisfaction. The evidence is uncontroverted that the satisfaction of judgment was gratuitously granted by Ronald to Steven, was not an arms-length transaction and deprived Imperial of a valuable asset. Since the release is obviously a conflict of interest transaction for the benefit of Steven Woods and none of the exceptions in § 17–16–831 even arguably apply, the release would be voidable by the corporation even without considering the president's authority to execute it. Though not part of the district court's stated reasoning, the court's decision would be sustainable on this ground alone. *Masinter v. Markstein,* 2002 WY 64, ¶ 8, 45 P.3d 237, ¶ 8 (Wyo.2002).

[¶ 33] Steven Woods' last contention on appeal is that the district court rulings must be set aside because the court improperly received and may have relied upon hearsay evidence in the form of affidavits from Attorney Kingston and Marquietta Woods when it set aside the satisfaction of judgment and denied the motion to quash execution on the judgment. Again, Steven Woods presents no pertinent authority or cogent argument. The decision appealed from concerns three post-judgment motions. W.R.C.P. 6(c) indicates the filing of affidavits in support of or opposition to motions. Notwithstanding the rule, however, the court's findings that the corporate president lacked authority to release a judgment against a director and former president, and that Steven Woods gave no consideration for the release, are fully supported in the record even without the affidavits. Appellant is correct that the facts in this regard were substantially undisputed; he is incorrect in arguing that undisputed facts must lead to his preferred legal conclusion.

**Steven Woods v. Wells Fargo, No. 02–174**

[¶ 34] In the second of the consolidated cases, a shareholder derivative lawsuit, Steven Woods alleged that Wells Fargo's predecessor, Norwest Bank, as director, officer and majority shareholder of Imperial, elected to liquidate the corporation rather than operate it as a going concern, to the detriment of the corporation and its shareholders. Wells Fargo filed a motion for summary judgment as to the entire action, on the grounds that the plaintiff had failed to comply with the prerequisites, under statute [3] and rule of civil procedure,[4] for filing a shareholder derivative action.

3. Wyo. Stat. Ann. § 17–16–741. Standing.

(a) A shareholder may not commence or maintain a derivative proceeding unless the shareholder:

(i) Was a shareholder of the corporation at the time of the act or omission complained of, or became a shareholder through transfer by operation of law from one who was a shareholder at the time; and

(ii) Fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

4. W.R.C.P. 23.1, "Derivative actions by shareholders," is similar to F.R.C.P. 23.1, and provides:

In a derivative action brought by one or more shareholders or members to enforce a right of a

[¶ 35] The district court granted Wells Fargo's summary judgment motion, finding that Steven Woods' complaint did not contain a verified allegation of demand upon Imperial. The court also found that, even assuming the demand were made or could be excused, the pleadings, findings and judgment entered in *Imperial Homes, Inc. v. Steven R. Woods* dictated the conclusion that Steven Woods could not fairly and adequately represent the interests of the other shareholders.

**Standard of Review**

[¶ 36] We have often stated that, in reviewing a summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decisions on issues of law. *Hutchins v. Payless Auto Sales, Inc.*, 2004 WY 22, ¶ 11, 85 P.3d 1010, ¶ 11 (Wyo.2004). However, federal case law provides that a determination of whether a shareholder fairly and adequately represents a corporation under F.R.C.P. 23.1 is to be decided on a case-by-case basis and is left to the sound discretion of the trial court. *Lewis v. Curtis,* 671 F.2d 779, 783 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). We adopt the same standard of review.

[¶ 37] We have also often stated our abuse of discretion standard: "We perceive the core of our inquiry as reaching the question of reasonableness of the choice made by the trial court." *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). In *Vaughn,* we reaffirmed the standard adopted in *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986):

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985).

*Vaughn,* 962 P.2d at 151.

**Discussion**

[¶ 38] The district courts summary judgment ruling was based on two independent grounds, the defective pleading and Steven Woods standing to bring a shareholders derivative action. In regard to the latter, the court primarily considered the fact that, at the time Steven Woods filed his derivative action, there was pending against him a lawsuit by Imperial for misappropriation of corporate funds. By the time the district court decided the summary judgment in Steven Woods shareholder action, the corporation had obtained and begun collection of an $80,000 judgment against him.

[¶ 39] In his appeal, Steven Woods argues that the demand requirement should be waived where it would be obviously futile, and that he is sufficiently motivated to pursue a claim against Wells Fargo. There is much more to the analysis, however, even if the formal pleading requirement were excused as futile. Various factors have been identified in determining whether a shareholder/plaintiff in a derivative action fairly and adequately represents the interests of the other shareholders. Appellant Steven Woods addresses only one of those factors, the capacity of the plaintiff to vigorously prosecute the matter on behalf of the corporation. Among other factors to be considered are the existence of any personal economic interest of the plaintiff that is adverse to the other shareholders or corporations interests; other pending litigation between

corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law. The complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

the plaintiff and defendants; plaintiffs vindictiveness towards the defendants; and the degree of support for the plaintiffs position by other shareholders. *Davis v. Comed, Inc.*, 619 F.2d 588, 593–94 (6th Cir.1980); 13 William M. Fletcher, et al., *Fletcher Cyclopedia of the Law of Private Corporations* 5981.41 (Perm. ed. rev.vol.1995). These factors are significant because "a stockholder who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of fiduciary character. He sues, not for himself alone, but as representative of a class comprising all who are similarly situated." *Davis,* 619 F.2d at 592 (quoting *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 549–50, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)).

[¶ 40] Although Steven Woods did not object to the courts taking judicial notice of the other proceedings between him and the corporation, he does argue their relevancy. Not only are the other proceedings relevant, they are essential in considering whether he fairly and adequately represents the other shareholders under the appropriate criteria. When he filed his derivative action, Steven Woods stood accused by the corporation of stealing almost all of its cash assets. By the time of the dismissal of the derivative action, the district court had found that in fact he had taken the funds and entered judgment against him for more than $80,000. The other shareholders not only acquiesced in Imperials lawsuit against Steven Woods, they authorized it in a special meeting. Moreover, Steven Woods alleged in his complaint and acknowledged in his summary judgment affidavit that all of the other shareholders acquiesced in the allegedly wrongful actions or inactions of the bank in operating the corporation. Based on this alone, the district court could very reasonably conclude that Steven Woods did not fairly and adequately represent their interests when his economic interest is in fact adverse to all of the other shareholders. In addition, the factual history is replete with evidence of animosity, hostility and chicanery toward Imperial and its other shareholders that would render a mockery of the fair representation requirement if Steven Woods were permitted to represent the interests of the corporation or its shareholders. The case of *Palmer v. U.S. Savings Bank of America,* 131 N.H. 433, 553 A.2d 781 (1989), likewise involved an attempted derivative suit filed by a shareholder who had pending litigation against the corporation. In addition to a clear conflict of interest, the court in dismissing the derivative action noted the possibility of a shareholder plaintiff filing a derivative action against a corporation to gain leverage in the pre-existing lawsuit. *Id.* at 786–87. The same concern is present in this case. Given his misappropriation of corporate assets, the related pending litigation, his total lack of support from other shareholders and animosity toward them, the district courts decision can only be deemed a sound one, based on objective criteria and not arbitrary or capricious.

***Steven Woods v. Roger Woods, Marquietta Woods and Wells Fargo, No. 02–179***

[¶ 41] In this third of the consolidated appeals, Steven Woods challenges three orders of the district court regarding the administration of the W R Revocable Trust, namely, the order denying distribution of the trust, the order granting the trustee's intervention, and the order removing the brothers as co-trustees.

**Standard of Review**

[¶ 42] The meaning of a trust instrument is determined by the same rules that govern the interpretation of contracts. *Kerper v. Kerper,* 780 P.2d 923, 934 (Wyo. 1989). The intent of the settlor is determined, if possible, from the trust document itself. *Id.* The determination of whether the agreement is ambiguous on its face does not require extrinsic evidence and is therefore a question of law which we review *de novo. Hutchison v. Hill,* 3 P.3d 242, 245 (Wyo. 2000). The interpretation of an unambiguous trust instrument likewise does not require consideration of evidence and is reviewed *de novo. Samuel v. Zwerin,* 868 P.2d 265, 266 (Wyo.1994). The interpretation of an ambiguous instrument is a mixed question of law and fact, *Burbank v. Wyodak Resources Dev. Corp.,* 11 P.3d 943, 947 (Wyo.2000), which will

be reversed only if it is clearly erroneous or contrary to the great weight of the evidence. *Hutchison,* 3 P.3d at 245.

**Discussion**

[¶ 43] Two articles of the W R Revocable Trust document address distribution of the trust corpus after Raymond Woods' death:

> ARTICLE VI.
>
> PAYMENT AT DEATH OF GRANTOR
>
> A. Upon the death of Grantor, Successor Trustee shall pay directly, or to Grantor's Personal Representatives as said Personal Representative shall direct, Grantor's funeral and burial expenses, claims legally enforceable against Grantor's Estate, expenses of administering Grantor's Estate including expenses of last illness, if any, attorney's and accountant's fees, if deemed necessary in the best judgment of Successor Trustee, and any estate and inheritance taxes payable by reason of Grantor's death. If no Personal Representative is appointed, Successor Trustee shall pay all such expenses directly out of the Trust Estate. All such expenses, claims and taxes shall be paid without apportionment and without contribution from any person.
>
> B. After Grantor's death, and after making any payments necessary under the provisions of Paragraph A of this Article VI Successor Trustee shall, from the principal of the Trust Estate, transfer, convey and distribute equally to the Grantor's children STEVEN R. WOODS, ROGER A. WOODS, RONALD D. WOODS, and MARQUIETTA C. WOODS, share and share alike and the trust terminated....

Article X addresses the trustee's powers:

> In order to carry out the provisions of this Trust, Trustee and Successor Trustee shall have all powers conferred by the Wyoming Uniform Trustees' Powers Act, W.S. 4-8-101 through 4-8-111 (all of which is incorporation [sic] herein by this reference). Such powers shall be exercised in good faith and in accordance with Trustees' fiduciary obligations. In general, Trustee and Successor Trustee shall have the power to any and all things for the preservation and the management of the Trust Estate which they deem necessary or for the best interest of the Beneficiaries of the Trust. Trustees shall not incur any liability for any loss or damage incurred by reason of the exercise of any of Trustees' fiduciary powers so long as they were exercised in good faith and without willful negligence.

[¶ 44] A portion of the referenced Uniform Trustees' Powers Act[5] states at Wyo. Stat. Ann. § 4-8-103 (LexisNexis 2001):

> (a) From time of creation of the trust until final distribution of the assets of the trust, a trustee has the power to perform, without court authorization, every act which a prudent investor would perform for the purposes of the trust including but not limited to the powers specified in subsection (c).
>
> * * * *
>
> (c) A trustee has the power, subject to subsections (a) and (b):
>
> * * * *
>
> (vii) To acquire or dispose of an asset, for cash or on credit, at public or private sale, and to manage, develop, improve, exchange, partition, change the character of, or abandon a trust asset or any interest therein, and to encumber, mortgage, or pledge a trust asset for a term within or extending beyond the term of the trust, in connection with the exercise of any power vested in the trustee;
>
> * * * *
>
> (xix) To pay or contest any claim; to settle a claim by or against the trust by compromise, arbitration or otherwise; and to release, in whole or in part, any claim belonging to the trust to the extent that the claim is uncollectible;....

[¶ 45] The trust's accountant testified at the hearing on Defendant's Motion for Distribution in 2000 that all of the estate tax issues had not been finalized. As payment of taxes was a stated pre-condition for termination of the trust, and the trust's real estate would be

5. Repealed in 2003. 2003 Wyo. Sess. Laws ch. 124, § 3.

a source of funds to pay the taxes, this alone was sufficient justification for the district court to deny Steven Woods' motion to require distribution of the real estate.

[¶ 46] In addition, the trust had been involved in a quiet title action regarding a claim to a mortgage on one of the commercial real estate parcels held by the trust. This action remained pending at the time of the August 2000 hearing on Steven Woods' motion to distribute all of the trust assets.

[¶ 47] The trust instrument provided that, upon the grantor's death, the trustee was to pay all claims legally enforceable against the grantor's estate and all estate and inheritance taxes payable by reason of his death. Only then was the trust property to be distributed to grantor's children. The instrument also gave the trustee all powers to manage and preserve the trust property as found in the Wyoming Uniform Trustees' Powers Act. In at least two respects, therefore, the possible outstanding tax liability and the pending quiet title action, the conditions for final distribution of the trust real estate had not occurred, and the district court properly denied distribution of the trust's real estate.

[¶ 48] By its incorporation of the Uniform Trustees' Powers Act, the trust instrument incorporated the power to sell trust property found at § 4–8–103(c)(vii), as it existed at the time the trust was created. The trust directs distribution of the property equally among the four children, but does not otherwise specify whether the real property be distributed in kind or first liquidated. The direction to pay taxes and claims, however, implies that at least some of the property is to be converted to cash. The Restatement (Second) of Trusts § 347 (1959) authorizes distribution of trust assets in kind or in cash, as is reasonable under the circumstances. The real estate that was the subject of Steven Woods' motion to distribute consists of three parcels of commercial real estate. As noted above, the parties are far from amicable and partition litigation is likely if they received the properties as tenants in common. Several of the other beneficiaries opposed the motion. Under these circumstances, we cannot conclude that the district court abused its discretion in denying the motion to distribute the trust assets in kind.

[¶ 49] Appellant Woods next argues that the district court erred procedurally when it allowed the intervention of the trustee, and that it was therefore without subject matter jurisdiction to order the prior approval of the sale of trust property. The order requiring pre-approval was entered in January 1999 at Steven Woods' own request, and he first raised his objection to it in 2002. Because of his obvious invited error problem and delay in challenging the order, he now raises subject matter jurisdiction objections.

[¶ 50] "Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.' " *Lacey v. Lacey,* 925 P.2d 237, 238 (Wyo.1996) (quoting *Fuller v. State,* 568 P.2d 900, 903 (Wyo. 1977)). Subject matter jurisdiction is therefore not a subject of judicial discretion, *In Interest of DG,* 825 P.2d 369, 376 (Wyo.1992), nor can it be created or destroyed by procedural irregularities. The Rules of Civil Procedure do not extend or limit the jurisdiction of any court. W.R.C.P. 82; *Frederick v. District Court,* 399 P.2d 583, 584 (Wyo.1965).

[¶ 51] Nevertheless, Woods attempts to bootstrap alleged procedural irregularities over the intervention of the trustee into an argument that any orders of the court following intervention are without subject matter jurisdiction, even encompassing orders which he himself requested. His attempt must fail. The jurisdiction of the district courts is defined in Wyo. Const. Art. 5, § 10, which states:

> The district court shall have original jurisdiction of all causes both at law and in equity and in all criminal cases, of all matters of probate and insolvency and of such special cases and proceedings as are not otherwise provided for. The district court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court;....

The district courts of Wyoming have plenary jurisdiction over trust administration. Wyo. Stat. Ann. § 4–10–203 (LexisNexis 2003);

*Spear v. Nicholson*, 882 P.2d 1237, 1241 (Wyo.1994). We fail to see how any defect in the process by which the trustee intervened in the case, even if it were established, would divest the court of the power to enter orders regarding trust administration.

[¶ 52] Finally, Woods argues that the removal of the co-trustees in 1998 and the appointment of Norwest Bank as successor trustee was done without notice and an opportunity to be heard, and therefore deprived him of due process under the United States and Wyoming Constitutions. A review of the record shows that Steven Woods and his attorneys not only received notice of every hearing but attended and participated to some extent in every proceeding. On several occasions, they refused to present evidence or participate as directed by the court because they did not agree with the court's decisions on timing or subject matter of the proceedings, but they nevertheless participated and argued their disagreement. The court's refusal to schedule matters to their liking does not rise to a constitutional violation.

[¶ 53] Most importantly, the right to due process does not exist in a vacuum. Both the Wyoming and United States Constitutions require that due process of law be provided before deprivation of life, liberty or property. The burden of proving unconstitutionality is a heavy one; a claim of due process involves a requirement that the party claiming the constitutional protection demonstrate a protected interest in life, liberty or property, and the interest has been infringed in an impermissible way. *Michael v. Hertzler*, 900 P.2d 1144, 1146, 1148 (Wyo.1995). Woods does not address how he has a constitutionally protected life, liberty or property interest in remaining as co-trustee of the W R Revocable Trust, or how he would have retained such a right but for the court's alleged procedural mistakes. There being no evidence or cogent argument on these points, we need not consider them further. *Johnson v. Creager*, 2003 WY 110, ¶ 14, 76 P.3d 799, ¶ 14 (Wyo.2003).

## CONCLUSION

[¶ 54] The orders of the district court in all three of the consolidated cases are supported by the record, are within the trial court's discretion and otherwise consistent with law, and are therefore affirmed.