George R. BOWERS and Delores Bowers, d/b/a Lasalle Land and Cattle, Appellants (Defendants),

v.

Walter Leon HAWKEY, Appellee (Plaintiff).

No. 91–198.

Supreme Court of Wyoming.

Aug. 20, 1992.

Bruce P. Badley of Badley & Rasmussen, P.C., Sheridan, for appellants.

Virgil G. Kinnaird of Law Office of Healy & Kinnaird, Sheridan, for appellee.

Before MACY, C.J., and THOMAS, URBIGKIT * and GOLDEN, JJ., and GRANT, District Judge.

* Chief Justice at time of oral argument.

GRANT, District Judge.

We affirm the trial court's cancellation of a thirty-year lease which gave George R. Bowers and Delores Bowers the use of their neighbor's 760 acres with fifty annual acre feet of water and all hunting and fishing rights for about $50, net, per month for the first ten years and only slightly more in the ensuing twenty years. We conclude that the evidence before the trial court satisfied all the elements for a finding of undue influence by the Bowerses over the owner of the land, Walter Leon Hawkey, a marginally competent chronic alcoholic who had come to repose special trust and confidence in the Bowerses after they apparently befriended him and helped him in his business and legal matters, including the dissolution of a family ranching corporation which was the source of Hawkey's property title. Before exposition of the facts and law underlying our decision, we should note the history of the case in the trial court.

Hawkey sued the Bowerses for cancellation of the lease, alleging facts which constituted the parties' relationship and the terms of the lease and demanding that the lease be canceled on the basis of unconscionability. The Bowerses answered, relying principally on the proposition that, by definition, contracts are agreements between parties which will be enforced by the court and, in that respect, this contract was no different than others. After discovery, the parties filed cross-motions for summary judgment, and the trial court granted Hawkey's motion.

In affirming the trial court's judgment for Hawkey, we note that it was not, strictly speaking, a summary judgment. Although the trial court's judgment did not specify its underlying legal theory, our basis differs somewhat from that urged by Hawkey and presumably adopted by the trial court. Essentially, the parties presented the evidence by deposition and affidavit, and the court determined the facts and applied the law. We hold that the evidence established that the lease resulted from undue influence by the Bowerses over Hawkey and do not reach the issue of unconscionability.

The Bowerses urge here that, in reviewing a summary judgment, we must apply the standard which views the record in the light most favorable to the party opposing the motion, giving that party all favorable inferences which may be drawn from the record. But given the manner in which this case was presented, the trial court did not make a determination that there were no genuine issues of material fact. Rather, the parties submitted to the court, during argument on the motions, all the discovery materials, mostly depositions, and stipulated on the record that such materials constituted all the evidence in the case and that trial would produce no additional or different evidence. The court decided the case on the parties' stipulation that the materials presented constituted all the evidence in the case. The trial court was left to draw its inferences from the evidence and apply the law to the facts.

■ Although the parties pleaded and argued the law of unconscionability in the trial court and in this Court, it appears that a more appropriate selection of applicable law would be that pertaining to undue influence. We have long held that this Court may properly affirm the trial court's judgment, if the result is appropriate, under any theory of the law appearing in the record. *Deisch v. Jay*, 790 P.2d 1273, 1278 (Wyo.1990); *Goss v. Goss*, 780 P.2d 306, 310 (Wyo.1989); *Ely v. Kirk*, 707 P.2d 706, 711 (Wyo.1985).

■ The ranch property owned by the Bowerses, who were residents primarily of Illinois, was adjacent to Hawkey's property, and, as neighbors, the Bowerses and Hawkey became close friends. During periods when the Bowerses were staying on their property, they and Hawkey visited almost daily, often sharing meals, card games, shopping excursions, and hunting and camping trips. The Bowerses gave gifts of money, food, boots, guns, and other personal property to Hawkey. They employed him and from time to time entered into agreements with him for grazing their cattle on his land and on their land under

his supervision with Hawkey sharing in the profits or being otherwise paid on the sale of the cattle. The Bowerses wanted to buy Hawkey's land.

The relationship was more than social. Hawkey's condition and situation were such that he needed guidance, direction, and advice on business and legal matters. The Bowerses recognized this and, in fact, provided such assistance. During the dissolution of a family corporation, which was the source of Hawkey's title to his property, the Bowerses accompanied Hawkey on trips to the attorney's office and helped counsel and advise him in the course of the proceedings. They were aware of the concern on the part of Hawkey's family that he was highly susceptible to the influence of others and their worry that he might be talked into "signing away the property." This concern was such that there was included in the dissolution agreement a provision which gave family members a ten-year right of first refusal for the purchase of Hawkey's portion of the property should he sell it. During all this, the Bowerses made it clear that they were interested in "what's best for Leon."

After the liquidation/dissolution, the Bowerses and Hawkey discussed with Hawkey's attorney their interest in entering into another cattle grazing agreement, but such an agreement was not made, and the Bowerses sought out other counsel. Hawkey believed that the lease would be the same as the previous agreements, i.e., cattle grazing with profit sharing, but the instrument, in fact, was the lease which became the subject of the litigation. Another attorney was consulted by the Bowerses about the lease which was adapted from other leases and typed by Mrs. Bowers. That attorney was not representing Hawkey's interest and testified that he would not have advised Hawkey to sign the lease. The perception of Hawkey's family and the Bowerses that Hawkey was vulnerable was correct.

Hawkey was dependent upon others for his care and well being, and he suffered from the effects of chronic alcohol abuse. He suffered mental limitations and was not able to make responsible decisions concerning his own well being, let alone decisions concerning legal matters such as those involved here. Hawkey was honest and unusually trusting of others; he trusted the Bowerses and believed that they were looking out for his best interest. The result was the lease described above.

The elements of undue influence necessary for cancellation are: " '(1) opportunity to control; (2) a condition permitting subversion; and (3) activity on the part of the person charged.' " *Short v. Hall*, 785 P.2d 1167, 1170 (Wyo.1990) (quoting *Macaraeg v. Wilson (Estate of Obra)*, 749 P.2d 272, 277 (Wyo.1988)). Further, *Perry v. Vaught*, 624 P.2d 776 (Wyo.1981), teaches that:

> The law of Wyoming is that when a transaction occurs between parties who are in a confidential relationship to each other, the courts will zealously scrutinize it. *Bergren [v. Berggren*, 77 Wyo. 438, 317 P.2d 1101 (1957)]. Accordingly, once a confidential relationship has been demonstrated, the burden then shifts to the recipient of the property to establish that the transaction was fair and conducted in good faith. *Brug v. Case*, Wyo.1979, 600 P.2d 710; *Baldwin v. Birchby*, Wyo.1959, 346 P.2d 278.

624 P.2d at 783.

The Bowerses' close and confidential relationship with Hawkey provided them an opportunity to exert influence and control, and Hawkey's mental condition and alcoholism certainly were such as to permit subversion. There was activity on the part of the Bowerses. They guided Hawkey through business and legal matters and then into execution of the subject lease. The facts clearly demonstrate a confidential relationship, and the Bowerses were unable to meet their burden to establish that the transaction was fair and conducted in good faith. The trial court was correct in canceling the lease.

Affirmed.