2004 WY 83

**Joan Rea JOHNSON, Individually and as Conservator for Donald R. Johnson, Appellant (Plaintiff),**

v.

**Linda J. REIGER and Gerald Reiger, Appellees (Defendants).**

No. 03–123.

Supreme Court of Wyoming.

July 15, 2004.

Representing Appellant: R. Michael Shickich of the Law Offices of R. Michael Shickich, LLC, Casper, Wyoming and Keith P. Tyler of Casper, Wyoming. Argument by Mr. Shickich.

Representing Appellees: Pro se. Argument by Mr. Reiger.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Joan Rea Johnson (Mrs. Johnson), individually and as conservator for her husband, Donald R. Johnson (Mr. Johnson), filed claims for undue influence, constructive fraud, conversion and replevin against her daughter and son-in-law, Linda and Gerald Reiger (the Reigers), alleging that they wrongfully persuaded Mr. and Mrs. Johnson to transfer over to them 596 shares of stock in the Johnson family ranch valued at $1,500 per share. The claims against the Reigers were tried to a jury but at the close of Mrs. Johnson's case the district court entered judgment as a matter of law for the Reigers. Mrs. Johnson appeals that judgment and we reverse, holding that questions of fact existed for jury determination on the claims of undue influence, constructive fraud and conversion.

## ISSUES

[¶ 2] Mrs. Johnson raises the following issues:

(1) Whether the trial court improperly analyzed the law of undue influence when it entered judgment as a matter of law on this claim.

(2) Whether the trial court improperly analyzed the law of constructive fraud when it entered judgment as a matter of law on this claim.

(3) Whether the trial court improperly analyzed the law of conversion when it entered judgment as a matter of law on this claim.

(4) Whether the trial court erred when it denied plaintiffs the opportunity to amend the pleadings to conform to the evidence.

(5) Whether the trial court improperly decided damage questions, rather [than] allowing the jury, when it entered judgment as a matter of law.

[¶ 3] The Reigers, appearing *pro se*, did not present any issues for review.

## FACTS

[¶ 4] The Rim Rock Ranch, located in Natrona County, Wyoming, has been owned and operated by the Johnson family since it was homesteaded in the early 1900s. Mr. and Mrs. Johnson were married in 1946 and have lived and worked on the ranch since that time. When Mr. Johnson's father passed away, ownership of the ranch passed to Mr. Johnson and his brother, and Mr. Johnson took over ranch operations.

[¶ 5] In 1999, Mr. Johnson fell ill, and the Reigers moved him to Denver to be near them while he recuperated. Not long thereafter, Mrs. Johnson was diagnosed with congestive heart failure. Mr. Johnson was subsequently declared legally incompetent and Mrs. Johnson was appointed guardian.

[¶ 6] Up until his illness in 1999, Mr. Johnson took care of the couple's financial affairs. Mrs. Johnson had not been involved in and had no knowledge of the ranch finances. After Mr. Johnson's illness, a family meeting was convened at the ranch over Labor Day 1999 and was attended by Mrs. Johnson, the Reigers, the Johnsons' other daughter Melissa Larson and her husband Tim, and the Johnsons' son Johnny Johnson and his wife Patty. The Johnsons' other son Paul was not present at the meeting. The purpose of the meeting was to assist Mrs. Johnson in figuring out the couple's finances. During the weekend, the family discovered that Mr. Johnson had been covering expenses with credit cards and had incurred $54,000 in credit card debt. At this, and subsequent meetings, family members de-

vised a plan for payment of the credit card debt whereby each of the four Johnson children would be responsible for one-quarter of the debt. In exchange for their assumption of the debt, Mrs. Johnson would transfer the stock in the ranch to the four children. In all, Mrs. Johnson claimed she transferred to her four children 596 of the 614 shares held by her and Mr. Johnson. Valued at $1,500 per share, the total value of the transferred stock was $894,000.

[¶ 7] In May of 2001, Mrs. Johnson filed a complaint against three of her children claiming undue influence, conversion, constructive fraud, replevin and civil conspiracy. Prior to the filing, the oldest son, John, returned the stock he had received to his mother. After the complaint was filed, Paul Johnson and Melissa Larson returned the stock they had received and were dismissed from the action. The case went to trial against the Reigers, who appeared in the action *pro se*, as they do on appeal. Mrs. Johnson proceeded on the theory that, due to her husband's illness, her own poor health, her lack of knowledge and experience with financial matters, and her reliance on Mr. Reiger who allegedly had some expertise in financial matters, she was unduly influenced into transferring stock in exchange for her children's assumption of a debt—stock of significantly greater value than the debt assumed. On the third day of trial, after the close of Mrs. Johnson's case-in-chief, the trial court granted the Reigers' *sua sponte* motion for judgment as a matter of law, holding in relevant part as follows:

(1) undue influence is not an independent cause of action under Wyoming law, and although undue influence may be considered in connection with the plaintiff's other claims, plaintiffs presented no evidence that they actually were influenced by the defendants, whether unduly or otherwise; (2) constructive fraud is an equitable claim and the plaintiffs failed to offer evidence that the defendants had any legal or equitable duty to the plaintiffs, or that, assuming such a duty existed, there was a breach of this duty; (3) plaintiffs' conversion claim fails because plaintiffs transferred title to the stock at issue and there is no evidence that the transfer was the result of undue influence by the defendants under the defi-

nitions of undue influence that exist in Wyoming case law; ...

The trial court determined the maximum number of shares at issue was 144 shares and held the Reigers were entitled to retain that number of shares. Mrs. Johnson timely appealed, claiming that 225 shares with a value of $337,500 were at issue and that sufficient evidence was presented on her claims of undue influence, conversion and constructive fraud to warrant denial of the Reigers' motion for judgment as a matter of law.

## STANDARD OF REVIEW

[¶ 8] Judgment as a matter of law should be granted cautiously and sparingly. *Dewey v. Wentland*, 2002 WY 2, ¶ 28, 38 P.3d 402, ¶ 28 (Wyo.2002). However, where the evidence is not legally sufficient to support a claim, the district court has an obligation to enter such a judgment. *Id.* We review de novo a decision to grant or deny judgment as a matter of law, meaning we examine the record anew affording no deference to the district court's views. *Id.* The test is whether the evidence appearing in the record is such that reasonable persons could reach but one verdict. *Id.* We view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that may be drawn from the evidence. *Id.* When the evidence permits more than one reasonable inference or the inferences favorable to the moving party are subject to doubt, the matter is properly for the jury to decide and a motion for judgment as a matter of law must be denied. *Id.*

## DISCUSSION

1. *Undue Influence*

[¶ 9] Mrs. Johnson claims the district court improperly analyzed the law of undue influence when it granted the Reigers' motion. She claims, first, the district court erred in summarily concluding there was no confidential relationship between the parties as required for an undue influence claim; second, the district court erred when it held in essence that an undue influence claim cannot be established by circumstantial evi-

dence; and, third, even under the strictest of standards, the evidence was sufficient to withstand the motion and submit the issue of undue influence to the jury. The Reigers respond generally that the evidence presented by Mrs. Johnson did not substantiate her allegations and was disproved by other evidence presented to the district court.[1] We hold that the district court erred in granting the Reigers' motion for judgment as a matter of law.

[¶ 10] Contrary to the district court's conclusion that undue influence is not an independent cause of action in Wyoming, this Court has recognized the claim in a number of cases involving *inter vivos* or testamentary transactions. *Marchant v. Cook*, 967 P.2d 551 (Wyo.1998); *Bowers v. Hawkey*, 837 P.2d 78 (Wyo.1992); *In re Estate of Waters v. Holkan*, 629 P.2d 470 (Wyo.1981). In order to prove undue influence in an *inter vivos* transaction, the plaintiff must show: 1) opportunity to control; 2) a condition permitting subversion; and 3) activity on the part of the person charged. *Marchant*, 967 P.2d at 558. We have said transactions will be carefully scrutinized where the parties involved have a confidential relationship. *Id.* Once the person seeking to void the transaction establishes that a confidential relationship existed between the grantor and grantee, the burden shifts to the grantee to prove the transaction was fair and conducted in good faith. *Id.* The party asserting the claim must present evidence showing the actual application of control and undue influence by the party charged with exercising undue influence. *Id.*

[¶ 11] In the context of an undue influence claim, the existence of a family relationship alone is not enough to establish the requisite confidential relationship. *Walsh v. Walsh*, 841 P.2d 831, 835 (Wyo. 1992). Such a relationship can be shown, however, by evidence that one party is under the domination of another or, because of the relation between them, is justified in assuming that the other party will not act in a manner inconsistent with his or her welfare. *Johnson v. Soulis*, 542 P.2d 867, 874 (Wyo. 1975); *Walsh*, 841 P.2d at 834. A grantor's dependence on the grantee may also create a confidential relationship. *Perry v. Vaught*, 624 P.2d 776, 783 (Wyo.1981); *Walsh*, 841 P.2d at 835.

[¶ 12] We applied these factors in *Marchant* to uphold summary judgment on an undue influence claim where the party asserting the claim testified she had no facts tending to show that the party against whom she alleged the claim exercised control over, manipulated or directed the grantor to transfer the stock at issue and, in fact, had no information whatsoever concerning the grantor's reasons for making the transfer. We concluded from this testimony that the undue influence claim was based upon suspicion rather than actual facts. *Id.* at 558. We said the evidence was insufficient to show that the grantor's mental abilities were failing or that the party charged with undue influence was aware his abilities were failing. *Id.* We also held specific evidence proving the exertion of undue influence or control was required. *Id.*

[¶ 13] We reached the same result in *Estate of Short*, 785 P.2d 1167, 1171 (Wyo.1990), affirming summary judgment on an undue influence claim where no evidence was presented that the party against whom the claim was made controlled or influenced the transaction at issue and two witnesses testified the grantor managed his own financial affairs. Likewise, we affirmed a summary judgment in *Walsh*, 841 P.2d at 835, where there was no showing of a confidential relationship, dependency or reliance by the grantor or involvement in the transaction by those charged with undue influence.

[¶ 14] In contrast, in *Bowers*, 837 P.2d 78 (Wyo.1992), we affirmed the trial court's find-

---

1. In their *pro se* brief, the Reigers do not directly address the issues presented by Mrs. Johnson. Instead, their four page brief consists primarily of assertions that Mrs. Johnson failed to comply with various court rules, fabricated and distorted the facts and generally failed to produce evidence to support her claims. They also accuse appellate counsel of attempting to deceive this Court and having a personal conflict with them. The Reigers' assertions either are not responsive to the issues raised or are not supported by cogent argument or appropriate citation to the record and legal authority. We, therefore, do not address them.

ing of undue influence where the evidence presented showed in pertinent part:

> [The grantor]'s condition and situation were such that he needed guidance, direction, and advice on business and legal matters. The [grantees] recognized this and, in fact, provided such assistance.... [They] accompanied [him] on trips to the attorney's office and helped counsel and advise him in the course of the proceedings....
>
> [The grantor] trusted the [grantees] and believed that they were looking out for his best interest.
>
> ...
>
> The [grantees'] close and confidential relationship with [the grantor] provided them an opportunity to exert influence and control, and [the grantor's] mental condition and alcoholism certainly were such as to permit subversion. There was activity on the part of the [grantees]. They guided [the grantor] through business and legal matters and then into execution of the subject lease.

■■■ [¶ 15]  With this precedent in mind, we examine the evidence supporting Mrs. Johnson's undue influence claim.[2]  Mrs. Johnson testified Mr. Johnson took care of the ranch finances and she had no understanding of their financial affairs when he became ill in August of 1999. She testified that after the Reigers took Mr. Johnson to Denver and she was diagnosed with congestive heart failure, she turned to her children because she "needed help to figure out where [she] was headed." She testified that she looked specifically to Mr. Reiger for help because he had the most business experience of all her children and in-laws.

[¶ 16]  Mrs. Johnson testified that before the Labor Day family meeting, her children told her to work up a yearly budget, which she attempted to do despite her limited knowledge of financial matters such as prop-erty and income taxes. During the Labor Day weekend, Mrs. Johnson's daughter, Melissa, discovered the credit card statements as she was looking through papers in Mr. Johnson's office. The children informed Mrs. Johnson about the $54,000 credit card debt that weekend.

[¶ 17]  Later in September, Mr. and Mrs. Johnson, their daughter Melissa, their son John and his wife Patty, and Mr. Reiger met with a lawyer and an accountant. Mrs. Johnson testified that Mr. Reiger had an agenda prepared, which was followed during the meeting, and she relied upon him during the meeting. After the meeting, she received pressure from the Reigers to transfer the stock. During this same time, Mrs. Johnson went back to the doctor and learned she had other serious health problems. She testified she thought at the time her days were numbered. She also learned during this time frame that her son Paul had suffered a heart attack.

[¶ 18]  The day after she learned about Paul's heart attack, Mrs. Johnson's son-in-law Tim Larson arrived at the ranch from Colorado. Mrs. Johnson signed over her stock certificates, retaining ten shares for Mr. Johnson and eight shares for herself and giving the remainder of the stock she and Mr. Johnson owned to Mr. Larson. She testified her children suggested she transfer the stock and she did not understand the consequences of the transfer, did not know how much the stock was worth, was feeling overwhelmed at the time and gave the certificates to her son-in-law because she did not believe she was going to live much longer. She also testified she thought she and her children and their families were working together as a family to figure out the finances.

[¶ 19]  Mr. Reiger testified that the idea for the transfer of stock to the Johnsons' children was his and he proposed it to the rest of the family at the Labor Day meeting. He also testified that he never told Mrs.

---

**2.**  The Reigers point to no evidence supporting the trial court's decision. In fact, their brief is devoid of any mention of any evidence presented at trial and contains no references to the district court record. We have long held to the rule that while we may make allowances for *pro se* litigants, they are not excused from compliance with the Wyoming Rules of Appellate Procedure. *Kelley v. Watson*, 2003 WY 127, 77 P.3d 691, 692 (Wyo.2003). While we proceed to address the issues framed by Mrs. Johnson, we note that the Reigers' brief was of no assistance to this Court in resolving the issues presented.

Johnson that the "gift" of stock was worth considerably more than the $54,000 debt payment in return for which the stock transfer was made a condition. Mrs. Reiger confirmed that it was her husband who made the proposal for paying off the $54,000 debt in return for the stock transfer.

[¶ 20] Bruce Kahn, M.D., a psychiatrist specializing in geriatric psychiatry, testified that in his opinion Mr. Johnson was suffering from unequivocal dementia and would not have had sufficient mental capacity to engage in financial transactions or manage his own personal or financial affairs in the fall of 1999. Douglas McLaughlin, the attorney the family met with in September 1999, also testified that Mr. Johnson was not competent to discuss financial decisions. As for Mrs. Johnson, Dr. Kahn testified that in his opinion she was under considerable to extreme emotional distress due to the events occurring in her life in August and September of 1999 and was extremely susceptible to undue influence. Mr. McLaughlin similarly testified that Mrs. Johnson did not look well and did not seem to understand the financial matters being discussed. He testified that he had the impression Mr. Reiger was involved in the financial planning profession and that · he and Mrs. Johnson's children dominated the meeting.

[¶ 21] Viewing this evidence in the light most favorable to Mrs. Johnson and giving to her all reasonable inferences that may be drawn from it, we conclude the evidence presented raised the inference that the Johnsons' decision to transfer the shares of stock to their children was unduly influenced by the Reigers. Mrs. Johnson presented evidence from which it might be concluded that a confidential relationship existed between herself and the Reigers, i.e. that she was dependent upon them for advice in sorting out her financial affairs and was justified in assuming they would not act in a manner inconsistent with her welfare. *Perry*, 624 P.2d at 783. Borrowing the language from *Bowers* 837 P.2d at 80, the evidence presented raised an inference that Mrs. Johnson's "condition and situation were such that [she] needed guidance, direction and advice on [financial] matters" and that the Reigers "recognized this and, in fact, provided such assistance." Additionally, as in *Bowers,* a reasonable inference could be ·made that the Reigers' active involvement in Mrs. Johnson's financial affairs after Mr. Johnson's illness "provided them an opportunity to exert influence and control" and Mrs. Johnson's own health problems combined with the other recent and ongoing events in her life permitted subversion. Also as in *Bowers,* there was activity on the part of the Reigers, who helped guide Mrs. Johnson through her financial difficulties and came up with the plan for payment of the debt in exchange for transfer of the stock. Although *Bowers* involved more compelling facts which showed the grantor depended upon others for his care, suffered mental limitations, was unable to make responsible decisions and was highly susceptible to the influence of others, facts that were not present in Mrs. Johnson's case, we conclude the evidence, viewed in the light most favorable to Mrs. Johnson, was sufficient at least to raise an inference that a confidential relationship existed, shifting the burden to the Reigers to show the transaction Mr. Reiger proposed was fair and conducted in good faith. The entry of judgment as a matter of law was not appropriate on the undue influence claim but was properly a matter for the jury to decide.

### 2. ·Constructive Fraud

[¶ 22] Constructive fraud has been defined as consisting of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another, and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects. *In re Estate of Borton,* 393 P.2d 808, 812 (Wyo.1964). The district court held Mrs. Johnson's constructive fraud claim failed because she presented no evidence that the Reigers owed her a legal or equitable duty.

[¶ 23] Whether a duty exists is a question of law for the court to decide. *Lee v. LPP Mortg. Ltd.,* 2003 WY 92, ¶ 20, 74 P.3d 152, ¶ 20 (Wyo.2003). The existence of

a duty is "to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court." *Id.,* quoting W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 37 (5th ed.1984). Once it is determined that a duty exists as a matter of law, then any claimed breach of that duty presents a question of fact to be resolved by the trier of fact. *Id.*

■ [¶ 24] Ordinarily, for a duty to arise under circumstances like those presented in this case, a fiduciary or other similar relation of trust and confidence must exist between the parties. *Id.,* ¶ 21. Two basic types of fiduciary relationships exist. *Id.* The first type is based on formal legal relationships, such as trustee-beneficiary, partnership, attorney-client, and principal-agency relationships, and is clearly not applicable to the Johnsons' claim against the Reigers. The second type is an informal fiduciary relationship, which is implied in law due to the factual situation surrounding the involved transaction, and the relationship of the parties to each other and to the transaction. *Id.* This second type of relationship is often called a confidential relationship and would be considered a relation of trust and confidence. *Id.* When determining whether the second type of fiduciary relationship exists, we are to consider the relationship of the parties to each other and to the transaction. *Id.* Such a relationship exists when one party has gained the confidence of the other and purports to act or advise with the other's interests in mind. *Id.*

■ [¶ 25] Fiduciary relationships are extraordinary and not easily created. *Id.* Because they carry significant legal relationships, they cannot be the product of wishful thinking. *Id.* They are not created by the unilateral decision to repose trust and reliance, but derive from the conduct or undertaking of the purported beneficiary. *Id.*

■ [¶ 26] Viewing the evidence presented by Mrs. Johnson in the light most favorable to her, we hold that sufficient evidence was presented to overcome the motion for judgment as a matter of law and submit the constructive fraud claim to the jury.

Upon submission of the claim, the jury's task was to determine the factual issue of whether the relationship of the parties was one of trust and confidence. In the event of a jury finding that such a relationship existed, an implied-in-law duty existed, as a matter of law, on the part of the Reigers and it was then for the jury to determine whether they breached that duty. This implied-in-law duty is based upon the relationship of the parties to each other and to the transaction. It derives from the evidence presented that the Reigers undertook to act with the Johnsons' benefit in mind and, by that undertaking, assumed a duty of honest advice and full disclosure. Whether or not a jury would have concluded the duty was breached, sufficient evidence existed to withstand the Reigers' motion for judgment as a matter of law.

### 3. *Conversion*

■ [¶ 27] The district court held Mrs. Johnson's claim for conversion failed because she "transferred title to the stock at issue and there is no evidence that the transfer was the result of undue influence by the [Reigers]." Mrs. Johnson contends the Reigers obtained the stock by means of undue influence, which by definition is a conversion. As we have said, undue influence constitutes an independent claim in Wyoming. We have defined the tort of conversion as any distinct act of dominion wrongfully executed over one's property in denial of his right or inconsistent therewith. *Albrecht v. Zwaanshoek Holding En Financiering, B.V.,* 816 P.2d 808, 813 (Wyo.1991). We said in *Marchant,* 967 P.2d at 556:

Conversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership. In order to establish a conversion claim, a plaintiff must show that:

(1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendants lawfully, or at least without

fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.

Given the elements necessary to state a claim for conversion, elements distinctively different than the elements of undue influence, Mrs. Johnson's argument that undue influence is by definition conversion is without merit. The two are separate claims requiring proof of different elements.

[¶ 28] Applying the elements of conversion, we held in *Marchant*, 967 P.2d at 556, that a conversion claim was not proven where the plaintiff failed to prove she had legal title to the property or the right of possession at the time it was converted. We said the fact that she was the property owner's daughter and allegedly an heir of his estate and beneficiary under his trust was not sufficient to support her conversion claim. *Id.* Absent evidence that the plaintiff enjoyed legal title or possessed an immediate right of possession to the disputed property at the time it was converted, we said summary judgment was proper. *Id.*

[¶ 29] Unlike the party asserting the conversion claim in *Marchant*, the Johnsons had legal title to the stock at the time it was allegedly converted by the Reigers. There was no dispute that the Johnsons held the stock in their name before they transferred it allegedly as a result of the Reigers' undue influence. On this basis, Mrs. Johnson argues the district court erred in entering judgment for the Reigers on her conversion claim.

[22] [¶ 30] In *Kenyon v. Abel*, 2001 WY 135, ¶ 11, 36 P.3d 1161, ¶ 11 (Wyo.2001), we said conversion occurs when a person treats another's property as his own, denying to the true owner the benefits and rights of ownership. This statement arguably suggests that title to the property must remain in the party alleging conversion for the claim to survive. However, we also said in *Kenyon* that a converter's title to stolen property is void, arguably suggesting that conversion can occur even where legal title to the property is transferred to the converter. In *Western Nat. Bank of Casper v. Harrison*, 577 P.2d

635, 640 (Wyo.1978) we said, "the actual conversion occurred when the defendant improperly took and then transferred title to the mobile home to Darlington," again implying that the party claiming conversion need not retain title to the property but that conversion can occur where title is transferred. Similarly, Black's Law Dictionary references "direct conversion", defining it in pertinent part as the act of wrongfully assuming title to property of another in oneself. *Black's Law Dictionary* 333 (7th ed.1999). On the basis of these latter authorities, we hold that Mrs. Johnson was required to show that she had legal title to the stock prior to its alleged conversion by the Reigers. She was not required to show she retained legal title after the alleged conversion. The district court erred in granting judgment as a matter of law for the Reigers on the conversion claim.

### 4. *Amendment of the Pleadings*

[¶ 31] After the district court ruled from the bench that it was dismissing her claims as a matter of law, Mrs. Johnson moved to have the pleadings conformed to the evidence presented at trial to allege a claim for quasi contract and/or unjust enrichment entitling her to redress in the form of restitution. The district court denied the motion without explanation. Mrs. Johnson claims the district court erred in denying the motion. She asserts the district court had no discretion to deny the amendment because restitution was at issue throughout the trial. It is not clear from her argument whether she raised the issue for consideration by this Court only in the event we affirm the district court's judgment or whether she wished to have the issue addressed regardless of our holding on the other issues. Given our resolution of those issues, and the fact that the case is remanded for a new trial on the claims of undue influence, conversion and constructive fraud, we find it unnecessary to address the issue of whether the district court erred in denying the motion to conform the pleadings to the evidence presented. Of course, Mrs. Johnson is free to renew her motion to amend her complaint on remand.

### 5. Jury Consideration of Damages

[¶ 32]  The district court held that 144 shares of stock were at issue.  Mrs. Johnson presented evidence that 225 shares of stock were at issue.  Our holding that factual questions exist on Mrs. Johnson's claims of undue influence, conversion and constructive fraud requires remand of the case for a new trial.  If conflicting evidence is presented as to the number of shares transferred to the Reigers in exchange for the credit card debt payment, it will be for the jury to determine the correct number of shares.

[¶ 33]  Reversed and remanded for a new trial.