2006 WY 105

**John William SHERARD and Nila Yoctorowic, Appellants (Plaintiffs),**

**v.**

**George E. SHERARD, individually and as Trustee of the Gunto Io Reo Trust; Jake H. Sherard; and Harold C. Sherard, Appellees (Defendants).**

**No. 05–242.**

Supreme Court of Wyoming.

Aug. 29, 2006.

Representing Appellants: James P. Castberg, Sheridan, Wyoming.

Representing Appellees: Kristen L. Cogswell, Sheridan, Wyoming; Shelly A. Cundiff, Dayton, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]    Appellants challenge a judgment of the district court declaring a quitclaim deed valid.   They also contend the district court erred in granting a motion for judgment as a matter of law against Appellants on their claim of fraud.   We affirm.

---

\* Chief Justice at time of oral argument.

## ISSUES

[¶ 2]   We restate the issues as:

I.   Whether the trial court erred in determining that the Quitclaim Deed was a valid conveyance.

II.   Whether the trial court erred in granting the motion for judgment as a matter of law on the claim for fraud.

## FACTS

[¶ 3]   The facts of this case are simple and are largely not in dispute. On May 8, 1998, Hazel G. Sherard and her son, George E. Sherard ("George"), executed a document entitled, "Contract And Declaration Of A Business Organization—A Common Law Business Trust Organization Also Known As An Unincorporated Business Organization," which authorized its trustees to operate under the name of GUNTO IO REO (hereinafter "Trust").[1] Additional documents were executed in connection with the Trust including conveyances of real property to the Trust.[2] Ms. Sherard and George became the sole trustees of the Trust. The ownership of the Trust was comprised of 100 units—the total number of units that the Trust Agreement authorized. Trust Certificate No. 1 was issued to Ms. Sherard representing her fifty units and George was issued Trust Certificate No. 2 representing his fifty units. Both certificates were retained in the records of the Trust.

[¶ 4]   Ms. Sherard died on May 2, 2001, leaving five surviving children: George, Jake H. Sherard ("Jake"), Harold C. Sherard ("Harold"), John W. Sherard ("John") and Nila K. Hickman Yoctorowic ("Nila").

Shortly before her death, Ms. Sherard executed two documents that create the basis for the current dispute. The first document, referred to by the parties as the "Transfer Document," was executed on April 24, 2001, and purported to make John a certificate holder of the Trust. The document stated in pertinent part: "I, Hazel Sherard, do hereby give, endow, assign, or transfer unto John William Sherard, the Trust Certificate Units represented by Trust Certificate Number 50 [a]s recorded by the Secretary of ... GUNTO IO REO." The second document was a Quitclaim Deed signed on May 1, 2001, by Ms. Sherard and George in their capacity as trustees. This deed transferred the real property from the Trust to four of Ms. Sherard's children: George, Harold, Nila and Jake. John was not identified as a grantee on the deed.

[¶ 5]   After Ms. Sherard's death, the children held a family meeting to discuss the disposition of her possessions. At the meeting, John presented the Transfer Document to his siblings for the first time. John also discovered that he was not a grantee on the Quitclaim Deed.

[¶ 6]   John filed a declaratory judgment action seeking a determination that the deed was null and void.[3] He also alleged that he was fraudulently deprived of his ownership of fifty units of the Trust. Subsequently, an amended complaint was filed in which John's sister, Nila, joined the suit as co-plaintiff. The Appellees filed a counterclaim asking the court, *inter alia*, to find the Transfer Document of no force or effect and to quiet title to the real property and confirm their ownership interests.

---

1.   The parties describe the Gunto Io Reo Trust as a statutory or business trust. Statutory trusts are governed by Wyo. Stat. Ann. § 17–23–101 *et seq.* Although the validity of the Trust was questioned at trial, the issue was not resolved by the district court's judgment. This issue is not presented to us on appeal.

2.   Ms. Sherard inherited real property located at 1657 South Sheridan Avenue which she placed into the Trust. This property was later conveyed out of the Trust to the State of Wyoming in exchange for real property located at 308 Fort Road and 2058 Frackleton Street. These proper-

ties were deeded by the sellers to Ms. Sherard and George in their capacity as trustees.

3.   The initial complaint alleged that the deed was void because Ms. Sherard lacked the mental capacity to understand the nature and effect of executing a Quitclaim Deed and that John was entitled to a portion of the property because he was a certificate holder of the Trust. In addition to those claims, the Amended Complaint alleged that the deed was void for lack of consideration. Appellants eventually stipulated that Ms. Sherard's mental capacity was not impaired and abandoned the lack of consideration claim.

[¶ 7] A bench trial was held on July 22, 2005. At the close of Appellants' evidence, Appellees moved for judgment as a matter of law on the claim of fraud. The district court granted the motion. At the conclusion of the trial, the district court ruled that the Transfer Document was unenforceable and declared the Quitclaim Deed valid. This appeal followed.

## STANDARD OF REVIEW

[¶ 8] "Final orders and judgments entered in declaratory judgment proceedings may be reviewed as in other civil actions." *Ford v. Board of County Comm'rs*, 924 P.2d 91, 93 (Wyo.1996) (quoting Wyo. Stat. Ann. § 1–37–109 (1988)). When a matter has been the subject of a bench trial before the district court, we review its factual determinations under a clearly erroneous standard and its legal conclusions *de novo*. *Union Pacific R.R. v. Trona Valley Fed. Credit Union*, 2002 WY 165, ¶ 6, 57 P.3d 1203, 1205 (Wyo. 2002). We will not set aside a district court's findings of fact unless they are clearly erroneous or contrary to the great weight of the evidence. *Kimball v. Turner*, 993 P.2d 303, 305 (Wyo.1999). When reviewing questions of law, we afford no deference to the district court. *Harber v. Jensen*, 2004 WY 104, ¶ 8, 97 P.3d 57, 60 (Wyo.2004). In addition, we review *de novo* a decision to grant or deny judgment as a matter of law and afford no deference to the district court's views. *Johnson v. Reiger*, 2004 WY 83, ¶ 8, 93 P.3d 992, 995 (Wyo.2004).

4. Paragraph 19 of the Amended Complaint also alleges that:
   The execution of the purported Quitclaim Deed by Trustee and Hazel on May 1, 2001, was without consideration and therefore constituted a distribution of trust assets in violation of the terms of the trust which require that a distribution of trust asset[s] can only be made to unit holders of the trust.
   Appellants eventually abandoned this argument, relying solely on the claim that John was entitled to distribution of the real property due to his status as a certificate holder. During closing arguments, Appellants summed up their contention surrounding the validity of the Quitclaim Deed as follows:
   [PLAINTIFFS' COUNSEL]: ... John Sherard is [the] owner of fifty units of the trust, even

## DISCUSSION

### Quitclaim Deed

[¶ 9] Appellants claim that John became a certificate holder of the Trust upon Ms. Sherard's execution of the Transfer Document. The Amended Complaint alleges that "[t]he effect of the purported Quitclaim Deed, if valid, would be to deprive John of property that ... John would be entitled to as owner of the fifty (50) Certificate Units assigned to John by Hazel on April 24, 2001."[4] As support for their position, Appellants point to Section C, ¶ 35 of the Trust, requiring that Trust assets be distributed proportionately among the certificate holders of the Trust upon its termination, unless contrary instructions are contained within the minutes.[5] They assert that the Quitclaim Deed violated ¶ 35 of the Trust and, as a result, the deed is void.

[¶ 10] Appellees dispute that John is a certificate holder of the Trust. They contend that because John failed to surrender the assignment to the trustees and obtain a new certificate in accordance with provisions of the Trust, no transfer occurred. Appellees further contend that no transfer occurred because Ms. Sherard did not own Certificate 50; she owned Certificate 1. They claim that there is no evidence that Certificate 50 ever existed.

[¶ 11] The parties' arguments center on the interpretation of the Trust document.[6] "The meaning of a trust instrument is determined by the same rules that govern the interpretation of contracts."

though the transfer was not completed because the trustee would not accept the transfer. If the Court finds that is valid, John is entitled to one-half of the property. That was the balance of my argument, Your Honor.

5. Section C, ¶ 35 of the Trust provides: "The Trust shall be proportionately distributed to the Certificate holders upon termination, providing there are no contrary .instructions contained within the minutes."

6. Pursuant to Wyo. Stat. Ann. § 17–23–102(a)(i) (LexisNexis 2001), "[t]he fact of ownership shall be determined and evidenced ... in conformity to the applicable provisions of the governing instrument of the statutory trust[.]"

*Woods v. Wells Fargo Bank,* 2004 WY 61, ¶ 42, 90 P.3d 724, 736 (Wyo.2004). The intent is determined from the trust document itself. *Id.* "[T]he interpretation of the language of a trust instrument constitutes a question of law. The 'appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings' de novo." *Rock Springs Land and Timber, Inc., v. Lore,* 2003 WY 100, ¶ 12, 75 P.3d 614, 619 (Wyo.2003) (internal citation omitted). Where the language used in the trust is unambiguous, the plain provisions of the trust determine its construction and interpretation does not require consideration of evidence. *Id.,* ¶ 12, 75 P.3d at 620; *Woods,* ¶ 42, 90 P.3d at 736.

[¶ 12] Upon our review, we find that the district court properly rejected John's claim that he is a certificate holder of fifty units of the Trust. Paragraph 33 of Section C of the Trust provides:

> ¶ 33: The Certificates shall be transferable by an appropriate assignment in writing and by surrender to the Trustees or to the person or agency designated by them, **but no transfer shall be of any effect as against the Trustees even with actual or constructive notice until a new Certificate has been duly recorded upon the books of the [Trust] kept for that purpose.**

(Emphasis added.) "The rule regarding effectuation of transfers of certificates of interest in a business trust is that, where the declaration of trust prescribes the manner in which shares or certificates of interest shall be transferred, there must be a compliance therewith." *Peoples Bank v. D'Lo Royalties, Inc.,* 235 So.2d 257, 265 (Miss.1970) (citing 13 Am.Jur.2d Business Trusts § 28 (1964); 12 C.J.S. Business Trusts § 17 (1938)). "Trust instruments often require that transfers of shares be entered in the books of the trust. Such provisions are binding upon all persons, shareholders, transferees, and trustees." *Id.* at 266 (quoting 156 A.L.R. 22 (1945)). Pursuant to Section C, ¶ 33 of the Trust, a transfer is effective only when a new certificate is issued and recorded. It is undisputed that this procedure was not followed in this case. As a result, John did not become a certificate holder of the Trust.

[¶ 13] Appellants' challenge concerning the validity of the Quitclaim Deed is premised upon John's perceived rights as a certificate holder to the property of the Trust. Having determined that the Transfer Document was invalid and that John is not a certificate holder of the Trust, we conclude that the district court did not err in confirming the validity of the deed.

## Fraud

[¶ 14] For their claim of fraud, Appellants alleged the following in their Amended Complaint:

> 22. George, while acting as Trustee, and individually and Jake and Harold, in concert with each other and other persons unknown to Plaintiffs at this time, intentionally, with malice aforethought, attempted to and did fraudulently deprive John of real property that John was entitled to as owner of fifty (50) Trust Certificate Units.
>
> 23. The fraud and the fraudulent acts of Trustee and George, Jake and Harold [were] initially committed on or about May 1, 2001, at the time that Trustee executed the Quitclaim Deed and continued thereafter up to and including January 31, 2002, the date that a Quitclaim Deed prepared by George, a copy of which is attached hereto as Exhibit # 2, was executed by Harold.
>
> 24. The fraud and the fraudulent acts of George Emmett Sherard as Trustee, George, Jake and Harold continue to the date of the filing of this Complaint.

At the close of Appellants' evidence, Appellees moved for judgment as a matter of law on the claim of fraud. They asserted that the evidence was legally insufficient to support the claim. The district court agreed and granted the motion.

[¶ 15] Appellants had the burden of proving fraud by clear and convincing evidence. *Sundown, Inc. v. Pearson Real Estate Co.,* 8 P.3d 324, 330 (Wyo.2000). The elements of fraud are: (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff

reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages. *Id.* "[F]raud will not be imputed to any party when the facts and circumstances out of which it is alleged to arise are consistent with honesty and purity of intention." *Duffy v. Brown,* 708 P.2d 433, 437 (Wyo.1985). It will never be presumed. *Id.*

[¶ 16] In reviewing *de novo* the district court's decision to grant judgment as a matter of law, we view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that may be drawn from the evidence. *Johnson,* ¶ 8, 93 P.3d at 995. "When the evidence permits more than one reasonable inference or the inferences favorable to the moving party are subject to doubt, ... a motion for judgment as a matter of law must be denied." *Id.* Although judgment as a matter of law should be granted cautiously and sparingly, where the evidence is not legally sufficient to support a claim, the district court has an obligation to enter such a judgment. *Id.*

[¶ 17] Our review of the record reveals a complete absence of any evidence to support the claim of fraud even when reviewed in the light most favorable to Appellants. John's fraud claim was premised upon his claim to be the owner of fifty trust certificate units. As previously discussed, John failed to satisfy his burden in that regard and presented no evidence that a new trust certificate had been issued to him and recorded as mandated by the express provisions of the Trust.

[¶ 18] In addition, Appellants presented no evidence of any false representation made by any Appellee which was intended to induce action by either Appellant. There is no evidence in the record that either Appellant relied upon any representation made by any of the Appellees. The undisputed evidence establishes that none of the Appellees were aware of the Transfer Document until after John presented the document at a family meeting subsequent to Ms. Sherard's death. We find no error in the district court's deci-sion granting judgment as a matter of law on Appellants' fraud claim.

[¶ 19] Affirmed.