2007 WY 21

**WYOMING DEPARTMENT OF REVENUE, Appellant (Defendant),**

v.

**EXXON MOBIL CORPORATION, Appellee (Plaintiff).**

No. 05–220.

Supreme Court of Wyoming.

Feb. 1, 2007.

Representing Appellant: Patrick J. Crank, Attorney General; Michael L. Hubbard, Deputy Attorney General; Martin L. Hardsocg, Senior Assistant Attorney General; William Russell, Assistant Attorney General.

Representing Appellee: Lawrence J. Wolfe, Patrick R. Day, and Walter F. Eggers, III, of Holland & Hart, Cheyenne, Wyoming; Brent R. Kunz, of Hathaway & Kunz, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, and BURKE, JJ., and KAUTZ, and DEEGAN, D.JJ.

BURKE, Justice.

[¶ 1] The Department of Revenue ("Department") appeals a declaratory judgment in favor of Exxon Mobil Corporation ("ExxonMobil"). The Department asserts that the district court should have dismissed the declaratory judgment action. Additionally, the Department claims that the district court misinterpreted Wyo. Stat. Ann. § 39–14–203(b)(vi)(D), the proportionate profits valuation method for oil and gas production. We affirm.

## ISSUES

1. Did the district court abuse its discretion when it denied the Department's Motion to Dismiss on the grounds of failure to exhaust administrative remedies or primary jurisdiction?

2. Did the district court correctly conclude that neither production taxes nor royalties are "direct costs of producing" in the proportionate profits formula set forth in § 39–14–203(b)(vi)(D) of the Wyoming Statutes?

## FACTS

[¶ 2] ExxonMobil owns and operates deep natural gas wells in Sublette County, as part of its LaBarge project. LaBarge gas has a unique and complex composition. The gas is largely carbon dioxide but also contains helium and methane. It is called a "sour gas" because it contains hydrogen sulfide. In its untreated state, the gas is not flammable and the gas stream is lethal. Consequently, the costs of processing the gas are high.

[¶ 3] In the mid–1980s, ExxonMobil invested more than a billion dollars in transportation and processing facilities for the LaBarge project in Sublette and Lincoln Counties. When production began in 1986, natural gas prices were low. Under the netback method of valuing production for taxation purposes in use at the time, ExxonMobil's massive capital investments failed to yield a return on investment and resulted in a zero taxable value. In response to this situation, legislation was passed in 1988 to cap the deductions that could be claimed for processing.

[¶ 4] Litigation ensued when ExxonMobil challenged the constitutionality of the legislation capping deductions. Eventually, ExxonMobil and the Department were able to resolve the litigation, agreeing upon a valuation methodology that was incorporated into a judicial decree. This agreed upon method, referred to by the parties as the "TSA method," was binding through August 1991.[1]

---

1. We described the development of the circumstances and litigation leading to the TSA in *Exxon Corp. v. Board of County Comm'rs*, 987 P.2d 158, 160–161 (Wyo.1999):

 In 1986, Exxon began extracting natural gas from the LaBarge wellfield in Sublette County. Pursuant to Wyoming statutes, Exxon's production is subject to severance and ad valorem taxes. For the 1986 and 1987 tax years, Exxon used the "netback" method of valuation. After deductions, Exxon reported a taxable value of zero for its LaBarge production. The Department of Revenue disputed this valuation and did not certify taxable value for those years.

ExxonMobil and the Department continued to use the TSA method in subsequent years.

[¶ 5] In 1997, Sublette County challenged the use of the TSA after August 1991. On May 20, 2004, after seven years of administrative proceedings, the Board of Equalization determined that the use of the TSA was authorized by Wyoming law. The next day, the Department sent a letter to ExxonMobil directing it to file amended tax returns and pay taxes according to the proportionate profits methodology for the 2003 production year. On July 22, 2004, the Department sent another letter stating that it would require

reporting utilizing the proportionate profits method for the 2004 production year "and beyond." Within that letter, the Department specified that royalties and production taxes should be included as "direct costs of producing" in the proportionate profits formula.

[¶ 6] ExxonMobil filed a declaratory judgment action in the district court for the First Judicial District. ExxonMobil requested a declaration that the Department did not have the authority to change the valuation methodology for 2003 and 2004 without complying with the notice requirements of Wyo. Stat. Ann. § 39–14–203(b).[2] Additionally,

---

Litigation regarding valuation of the LaBarge production began in 1988. That year, the Wyoming legislature enacted Wyo. Stat. Ann. §§ 39-1-401 and -402 (Michie Cum. Supp.1988). These statutes, which have since been repealed, provided that total deductions allowed by the Department of Revenue from the sale of taxable natural gas and associated natural resources could not exceed 40% of the annual gross receipts from the sale of these products. Wyo. Stat. Ann. § 39-1-402(a) (Michie Cum.Supp.1988) (Repealed by 1989 Wyo. Sess. Laws ch. 57, § 1). Shortly after these statutes were enacted, Exxon filed a declaratory judgment action in district court for the First Judicial District seeking a declaration that the 40% "cap" legislation was an unconstitutional delegation of legislative authority. Among the defendants named in the suit were the Department of Revenue, the Board of Equalization, and Sublette County.

In January 1989, a settlement was reached in the cap litigation, and a "Stipulation for Entry of Declaratory Judgment" was filed in district court. Signed by Exxon, the Wyoming Attorney General, and the Sublette County Attorney, the stipulation provided: "The parties have engaged in settlement negotiations which have resulted in an agreement which is embodied in a Settlement Agreement, an executed copy of which is attached." Sublette County was listed among the parties to the settlement agreement. Pursuant to the stipulation, the district court entered a declaratory judgment pronouncing the 40% cap legislation unconstitutional, thus ending the cap litigation.

Under the terms of the settlement agreement, Exxon paid the State and Sublette County $12 million in full satisfaction of Exxon's severance and ad valorem tax liability for the 1986, 1987, and 1988 LaBarge production. The settlement agreement also established the method to be used to value post–1988 LaBarge production. For January 1, 1989, through August 31, 1991, the State and County agreed to apply the comparison value method of valuation; and two of Exxon's processing agreements, the Howell and Yates agreements, were to be used as comparable value in computing

valuation. In exchange, Exxon agreed that, during this period, it would not contest the applicability of ad valorem and severance taxes to federal helium. As to the valuation method to be used after August 31, 1991, the agreement provided:

After August 31, 1991, the State agrees that it will recognize the Howell and Yates agreements as a comparison value and that the comparison value method may be used in conjunction with other recognized appraisal techniques to determine value. If the State uses any method other than the comparison value method based on the Howell and Yates agreements, the Parties agree that the question of future taxability, for severance and ad valorem purposes, and value of future helium production remain open and are not resolved by this Agreement.

(Footnotes omitted.)

2. Wyo. Stat. Ann. § 39–14–203(b) (LexisNexis 2005) provides, in pertinent part:

(b) Basis of tax. The following shall apply:
(i) Crude oil, lease condensate and natural gas shall be valued for taxation as provided in this subsection;

. . .

(vi) In the event the crude oil, lease condensate or natural gas production as provided by paragraphs (iii) and (iv) of this subsection is not sold at or prior to the point of valuation by bona fide arms-length sale, or, except as otherwise provided, if the production is used without sale, **the department shall identify the method it intends to apply under this paragraph to determine the fair market value and notify the taxpayer of that method on or before September 1 of the year preceding the year for which the method shall be employed.** The department shall determine the fair market value by application of one (1) of the following methods:

. . .

**(D) Proportionate profits—The fair market value is:**
**(I) The total amount received from the sale of the minerals minus exempt royalties,**

ExxonMobil challenged the Department's directive to include production taxes and royalties as direct costs of production in calculating proportionate profits under Wyo. Stat. Ann. § 39–14–203(b)(vi)(D).

[¶7] The Department filed a motion to dismiss. The Department urged the district court to decline jurisdiction over ExxonMobil's declaratory judgment action because similar claims were the subject of appeals pending before the Board of Equalization. In support of its motion, the Department argued that ExxonMobil failed to exhaust its administrative remedies and relied upon the primary jurisdiction doctrine. The district court denied the motion.

[¶8] Subsequently, ExxonMobil moved for summary judgment. The district court granted judgment in favor of ExxonMobil. The order of judgment declared:

1) The Department does not have authority to require ExxonMobil to change tax valuation methodologies under Wyo. Stat. § 39–14–203(b) without complying with the advance notice provision in the statutes. Section 39–14–203(b)(vi) requires notice of the selection of the valuation methodology on or before September 1 of the year preceding the year in which it is to be employed. The

Department's attempt to require ExxonMobil to employ the proportionate profits methodology for production years 2003 and 2004 is contrary to law and void, and therefore the Tax Settlement Agreement methodology applies for those production years.

2) Production taxes and royalties are not "direct cost[s] of producing" as that term is used in the proportionate profits statute, Wyo. Stat. § 39–14–203(b)(vi)(D), or the Department's Rule, Ch. 6, Section 4b(w). As a result, the Department has no authority to require ExxonMobil to include production taxes and royalties in the numerator or denominator of the proportionate profits quotient described in Wyo. Stat. § 39–14–203(b)(vi)(D)(I), and its direction to ExxonMobil that it do so for production years 2003, 2004 and beyond is null and void.

[¶9] This appeal followed. In its opening appellate brief, the Department challenged the district court's conclusion that the Department lacked authority to change ExxonMobil's valuation methodology for tax years 2003 and 2004. This issue was also being considered by the Board. Ultimately, the Board reached the same result as the district court and concluded that the Department

nonexempt royalties and production taxes times the quotient of the direct cost of producing the minerals divided by the direct cost of producing, processing and transporting the minerals; plus

(II) Nonexempt royalties and production taxes.

(vii) When the taxpayer and department jointly agree, that the application of one (1) of the methods listed in paragraph (vi) of this subsection does not produce a representative fair market value for the crude oil, lease condensate or natural gas production, a mutually acceptable alternative method may be applied;

(viii) If the fair market value of the crude oil, lease condensate or natural gas production as provided by paragraphs (iii) and (iv) of this subsection is determined pursuant to paragraph (vi) of this subsection, the method employed shall be used in computing taxes for three (3) years including the year in which it is first applied or until changed by mutual agreement between the department and taxpayer. If the taxpayer believes the valuation method selected by the department does not accurately reflect the fair market

value of the crude oil, lease condensate or natural gas, the taxpayer may appeal to the board of equalization for a change of methods within one (1) year from the date the department notified the taxpayer of the method selected;

(ix) If the department fails to notify the taxpayer of the method selected pursuant to paragraph (vi) of this subsection, the taxpayer shall select a method and inform the department. The method selected by the taxpayer shall be used in computing taxes for three (3) years including the year in which it is first applied or until changed by mutual agreement between the taxpayer and the department. If the department believes the valuation technique selected by the taxpayer does not accurately reflect the fair market value of the crude oil, lease condensate or natural gas, the department may appeal to the board of equalization for a change of methods within one (1) year from the date the taxpayer notified the department of the method selected;

. . .

(Emphasis added.)

could not retroactively change methodologies or impose a method for the upcoming year without timely notice to ExxonMobil. The Board issued its decision on December 1, 2005. Subsequently, on December 22, 2005, the Department withdrew its challenge to the first paragraph of the judgment, leaving only the propriety of the declaration in the second paragraph for our review.[3]

### STANDARD OF REVIEW

■ [¶ 10] The decision to dismiss a declaratory judgment action on the basis of non-exhaustion of remedies is committed to the sound discretion of the district court. *Rissler & McMurry Co. v. State,* 917 P.2d 1157, 1160 (Wyo.1996); *Union Pacific Resources Co. v. State,* 839 P.2d 356, 366 (Wyo. 1992); *Glover v. State,* 860 P.2d 1169, 1171 (Wyo.1993).

■ [¶ 11] Pursuant to Wyo. Stat. Ann. § 1–37–109, we review final orders and judgments entered in declaratory judgment proceedings as in other civil actions. *Sherard v. Sherard,* 2006 WY 105, ¶ 8, 142 P.3d 673, 676 (Wyo.2006). Determination of the proper treatment of royalties and production taxes under the oil and gas proportionate profits formula involves statutory interpretation and presents a question of law which we review *de novo. RME Petroleum Co. v. Wyoming Department of Revenue,* 2007 WY 16, ¶ 13, 150 P.3d 673, 678 (Wyo.2007).

### DISCUSSION

#### Motion to Dismiss

[¶ 12] First, the Department contends that the district court should have granted its motion to dismiss the declaratory judgment action. It argues the district court abused its discretion by allowing ExxonMobil's tax appeal to be "fragmented and litigated in a piecemeal fashion simultaneously in the courts and before the ... Board." The Department claims the district court should have required ExxonMobil to exhaust its administrative remedies, allowing the Board to use its expertise and experience in handling complex tax disputes. ExxonMobil maintains that the issues in the declaratory judgment action were questions of law properly decided by the district court.

■ [¶ 13] Wyoming's Uniform Declaratory Judgments Act, ("Act"), allows "[a]ny person ... whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute ..." to "have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations." Wyo. Stat. Ann. § 1–37–103 (LexisNexis 2005). The Act is remedial. Wyo. Stat. Ann. § 1–37–114 (LexisNexis 2005). "Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to legal relations, and is to be liberally construed and administered." *Id.* The existence of another remedy, including an administrative appeal, does not preclude declaratory judgment relief. *Rocky Mountain Oil and Gas Ass'n v. State,* 645 P.2d 1163, 1167–1168 (Wyo.1982); W.R.A.P. 12.12; W.R.C.P. 57. However, a district court retains discretion to withhold relief and "may refuse to render a declaratory judgment where the judgment would not terminate the uncertainty or controversy giving rise to the proceeding." Wyo. Stat. Ann. § 1–37–108 (LexisNexis 2005).

■ [¶ 14] We have recognized that the availability of declaratory relief may be restricted when administrative matters are involved. *Rocky Mountain Oil and Gas Ass'n,* 645 P.2d at 1168–1169. "Where the action would result in a prejudging of issues

---

3. The Department withdrew its asserted claims of error regarding three issues:

I. Did the District Court possess subject-matter jurisdiction [pursuant to the Wyoming Governmental Claims Act and Article 16, Section 7 of the Wyoming Constitution] to adjudicate Exxon Mobil Corporation's claim for specific performance of a contract with the Department of Revenue?

IV. Did the District Court incorrectly rule that the Department lacked authority to terminate the 1989 Tax Settlement Agreement because it did not follow the notice requirement set forth in Wyo. Stat. § 39–14–203(b)(vi)?

V. Did the Department have authority to discontinue application of the 1989 Tax Settlement Agreement, by its terms, for valuation of Exxon Mobil Corporation's 2003 LaBarge production?

that should be decided in the first instance by an administrative body, it should not lie." *Id.* at 1168.

> An action for declaratory judgment cannot be a substitute for an appeal from administrative decisions but is available even though there is a statutory method of appeal if it concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be based.

*Hirschfield v. Board of County Com'rs,* 944 P.2d 1139, 1142 (Wyo.1997).

 [¶ 15] The desire to avoid usurping the role of an administrative agency is manifested in two doctrines relied upon by the Department: the exhaustion requirement and the primary jurisdiction doctrine. We have explained these concepts as follows:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. Exhaustion applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. Primary jurisdiction, on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*Glover,* 860 P.2d at 1171 (citations and quotation marks omitted). The purpose of the exhaustion doctrine is to avoid premature interruption of the administrative process where the agency has been created to apply a statute in the first instance. *People v. Fremont Energy Corp.,* Wyo., 651 P.2d 802, 811 (1982). By contrast, the primary jurisdiction doctrine is apt when there is a basis

for judicial action independent of agency proceedings, but where courts refer certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved. *Zezas Ranch, Inc. v. Board of Control,* 714 P.2d 759, 761 (Wyo.1986) (finding proper application of the doctrine where the district court had jurisdiction to interpret a decree, it properly called upon the state agency with expertise to ascertain the facts necessary to correct an omission in the decree). We do not find the primary jurisdiction doctrine applicable here because no genuine issues of material fact existed, and no threshold determinations would be better made by an agency with expertise.[4] Rather, only questions of law were presented.

 [¶ 16] In tax appeals, we have recognized the potential applicability of the exhaustion requirement because the judiciary is not the taxing authority. *Union Pacific Resources Co.,* 839 P.2d at 364. In *Union Pacific,* the district court determined that the taxpayer was required to exhaust point of valuation issues before the Board. *Id.* at 360. This Court found no abuse in the district court's dismissal and "recognized a primary administrative agency function of the State Board of Equalization." *Id.* at 365. Additionally, this Court declined any invitation to assert original jurisdiction over point of valuation matters and observed: "The complexities of the Wyoming taxation system provide an adjudicatory challenge that will not be accepted for judicial resolution until administrative agency review and reconciliation ... can be completed." *Id.* at 366. The Department claims that *Union Pacific* supports the exhaustion requirement in this case.

[¶ 17] We do not find *Union Pacific* to require exhaustion in this case. The declination of jurisdiction in *Union Pacific* was not intended to be a broad refusal to entertain any future declaratory judgment action concerning a tax dispute. Rather, discretion would allow future determinations to be made on a case by case basis. *Id.* at 366 n. 4. The instant case presented issues of a different character from the factually complex

---

4. The Department does not argue that a genuine issue of material fact existed.

point of valuation matters in *Union Pacific.* According to the taxpayer in *Union Pacific,* the appeal involved "the proper method and manner in which the State, County and other named government officials ... may value, audit, assess, collect and review taxes on Union Pacific Resources Company's ... oil and gas production." *Union Pacific Resources Co.,* 839 P.2d at 358. Here, ExxonMobil challenged the Department's authority to retroactively select a valuation methodology contrary to statutory requirements, not the results obtained from the application of a particular methodology. ExxonMobil's proportionate profits issue posed a discrete and narrowly defined question of statutory construction. We see these issues pertaining to the Department's authority and the interpretation of the statutes underlying its actions as appropriate subjects for declaratory relief. *WCCC v. Casper Community College,* 2001 WY 86, ¶ 13, 31 P.3d 1242, 1248 (Wyo.2001).

■ [¶ 18] "The Act is an appropriate vehicle, not for prejudging issues that should be decided by an administrative agency, but for interpreting the statute ... upon which the administrative action is based." *Snake River Brewing v. Town of Jackson,* 2002 WY 11, ¶ 6, 39 P.3d 397, 402 (Wyo.2002). The district court's decision in the action filed by ExxonMobil did not "bypass an appropriate administrative ruling resulting in the prejudging of issues that should be decided in the first instance by an administrative body." *Quinn Revocable Trust v. SRW, Inc.,* 2004 WY 65, ¶ 18, 91 P.3d 146, 151 (Wyo.2004). Dismissal was not warranted because the district court did not intrude on the agency's fact-finding or administrative prerogative. *Memorial Hosp. of Laramie County v. Department of Revenue & Taxation,* 770 P.2d 223, 226 (Wyo.1989). We conclude that the district court did not abuse its discretion in denying the Department's motion to dismiss ExxonMobil's action for declaratory judgment.

### Proportionate Profits Formula

■ [¶ 19] We recently considered the character of royalties and production taxes in the oil and gas proportionate profits formula in *RME Petroleum Co. v. Wyoming Department of Revenue,* 2007 WY 16, 150 P.3d 673 (Wyo.2007). In *RME,* we reached the same conclusion as the district court and held that production taxes and royalties are not "direct costs of production" under Wyo. Stat. Ann. § 39–14–203(b)(vi)(D). *Id.,* ¶ 47, 150 P.3d at 690. Our holding in *RME* is dispositive of the Department's challenge, and further discussion of the proportionate profits formula is not necessary to resolve this appeal. The decision of the district court is affirmed.